HOME BENEFIT ASS'N OF ANGELINA COUNTY v. JORDAN. (No. 125.)

(Court of Civil Appeals of Texas. Beaumont. Nov. 2, 1916. Rehearing Denied Dec. 14, 1916.)

1. INSURANCE ☞146(2)—MUTUAL BENEFIT INSURANCE—CONTRACTS—CONSTRUCTION.
Insurance contracts should be literally construed.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 294; Dec. Dig. ☞146(2).]

2. APPEAL AND ERROR ☞1064(1)—HARMLESS ERROR—INSTRUCTION.
In an action on a mutual benefit certificate in an association whose constitution required the secretary to notify all members by postal card of assessments and required payment within 15 days of call, where the secretary testified that he mailed the usual notice, and the beneficiary, who was the wife of insured, testified that the notice was never received, an instruction that the law would then presume that the notice reached its destination, but that the presumption could be overcome by evidence to the contrary, was not prejudicial.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4219; Dec. Dig. ☞1064(1); Trial, Cent. Dig. § 553.]

3. INSURANCE ☞54—MUTUAL BENEFIT INSURANCE—CONTRACTS—CONSTRUCTION.
Where questionable language arises in the constitution and by-laws of an insurance association and one may be repugnant to another, courts will always construe the discrepancy to the benefit of the insured.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 66; Dec. Dig. ☞54.]

4. INSURANCE ☞751(1).—MUTUAL BENEFIT INSURANCE—CONTRACTS—NOTICE OF ASSESSMENT—CONSTRUCTION—"NOTIFY."
Where the constitution of a mutual benefit association which levied assessments only upon death of a member required the secretary to notify by postal card all members liable, the word "notify" should be construed "to make known," so that, where the insured failed to receive a postal card mailed by the secretary, notifying him of an assessment, such failure excused insured's failure to pay the assessment,

and his beneficiary could recover. Citing Words & Phrases, 4845.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1897; Dec. Dig. ☞751(1).
For other definitions, see Words and Phrases, First and Second Series, Notify.]

5. TRIAL ☞350(4)—SPECIAL ISSUES.
In an action on policy of mutual benefit association, whose secretary was required to notify by postal card all members liable to assessment, where the secretary testified that he mailed the card, and the beneficiary testified that it was never received, it was proper to submit the special issue whether the secretary did notify the insured by postal card.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 829; Dec. Dig. ☞350(4).]

6. TRIAL ☞350(4)—SPECIAL ISSUES.
In such case, it is proper also to submit the special issue whether insured received such a notice at any time before his death.
[Ed. Note.—For other cases, see Trial, Cent. Dig. § 829; Dec. Dig. ☞350(4).]

Appeal from District Court, Angelina County; L. D. Guinn, Judge.

Action by Mrs. W. R. Jordan against the Home Benefit Association of Angelina County. Judgment for plaintiff, and defendant appeals. Affirmed.

Denman & Thomas, of Lufkin, for appellant. W. J. Townsend, Jr., of Jacksonville, for appellee.

MIDDLEBROOK, J. This suit was brought by appellee against the appellant to recover $1,000, the maximum sum of an insurance certificate issued to W. R. Jordan by appellant, Home Benefit Association of Angelina County.

The insurance company is a mutual concern, in which the membership thereof began with $1 per member, and under its by-laws and constitution, at the death of any member, new assessment is made to meet the obligations of the company at the death of the next member. The association had, at the time of the death of Jordan, about 1,000 members. W. R. Jordan had removed from Angelina county, Tex., to Winsboro, La., where he died on the 23d day of March, 1915. George S. Kerr, another member of the benefit association, died on the 4th day of March, 1915.

Section 6 of the constitution and by-laws of the association, which was introduced in evidence, among other duties, enjoins upon the secretary the duty of notifying members of any assessments, in the following language:

"He shall keep the books of the society, make record of all bonds on the minutes book, notify all members by postal card of assessments regularly made by the board of directors. * * *"

Section 13 of the constitution and by-laws, among other things, provides:

"All assessments must be paid within fifteen days from the date of the call. Members failing to pay same within the time prescribed shall stand suspended, and will no longer be entitled to any of the benefits of the society."

There is but little evidence in the case in dispute. The facts show that Jordan was

a member of the association; that he died on March 23, 1915; that his widow was entitled to recover, unless the rules governing the company had not been complied with. They show also that after he had left Texas, he and his wife received some two or three notices by postal card through the mail, of deaths of members of the association and had paid the dues, in accordance with the rules of the association; also that Mrs. W. R. Jordan had notified the secretary, Menefee, where to send the notices of death to reach them. Secretary Menefee testified that after the death of George S. Kerr, on March 1, 1915, on the 4th day of March, 1915, he mailed a postal card to each of the members of the association, notifying them of such death, and calling for their assessment; that he did not receive any response from W. R. Jordan, nor his wife, Mrs. W. R. Jordan, within the 15 days, as required by the by-laws and constitution, and that on the 20th day of March, in accordance with the by-laws and constitution prescribing his duties as such secretary, he forfeited the certificate of W. R. Jordan. As already stated, W. R. Jordan died three days later. The facts show also that W. R. Jordan had been suffering with tuberculosis for six months prior to his death. The facts show, also, that one or two other members of the association did not get any notice of the assessment upon Kerr's death, and Secretary Menefee, upon cross-examination, admitted that he did not write out all of the notifications, and stated that his wife prepared some of them, he did not know how many, whether half, less than half, or more than half of them. He also testified that he had made mistakes in notification of members upon the death of a member, that he was not infallible, and that such mistake might have occurred. The facts show, also, that a few days after having mailed out the notices upon the death of Kerr, he wrote to the postmaster at Winsboro, La., to know if he had sent such card of notification to W. R. Jordan at that office. He also testified that he had a specific recollection of mailing the card to W. R. Jordan, because there were only three or four out of state members, and that he could remember them on account of the locus of their citizenship. In his direct testimony, he testified that he sent the notice to W. R. Jordan to Winsboro, La., route No. 2. W. R. Jordan did not, and had not lived on route No. 2, as is shown by the facts of this case, and Menefee was called back to the witness stand and corrected his direct testimony, and said that he sent the card to the proper address on route No. 1 instead of route No. 2, as he had previously stated.

Mrs. Jordan testified that no such notice had ever been received by them, and that if such notice had been sent, they would have complied with the rules and regulations of the company and forwarded the assessment.

Briefly, this is a fair presentation of the facts governing the issues presented to this court. The case was submitted by the trial court on special issues. The first special issue is:

"Did the defendant, Home Benefit Association, notify the deceased, W. R. Jordan, by postal card, of the assessment No. 16 to pay the death claim of George C. Kerr?"

The jury answered this question, "No."

The second special issue is:

"Did W. R. Jordan, or any one acting for him, receive such notice at any time before his death?"

This issue was answered, "No."

Then the court charged the jury as follows:

"You are further charged that if a notice was mailed to W. R. Jordan, properly addressed, and with the required postage on the same, and deposited in the post office at Lufkin, Tex., it is presumed that the mail reached its destination and was delivered to the proper person, but such presumption may be overcome by evidence showing that the letter was not so received by the party to whom it was sent."

A charge is also given on the burden of proof which it is unnecessary to here quote.

Appellant, Home Benefit Association, presented to the court its special charge No. 1, as follows:

"You are instructed that if you believe from the testimony in this case that the defendant, through its secretary, Joe Menefee, delivered to the post office at Lufkin, Tex., a postal card, like the one in evidence before you, properly stamped and addressed to Mr. W. R. Jordan, at Winsboro, La., on March 3, 1915, the said card being a call for assessment No. 16, you will return a verdict in favor of the defendant"

—which special charge was by the court refused. Timely bill of exception was reserved upon the court's refusal to give the charge. Exception was also reserved to issue No. 2, submitted to the jury by the trial court, alleging such issue to be immaterial. Exception was also reserved to that part of the court's charge which reads, "but such presumption may be overcome by evidence showing that the letter was not so received by the party to whom it was sent," because said clause of the court's charge is erroneous, in that the constitution and by-laws of the association provide the manner and character of notice to be given, to wit, by notifying by postal card of the assessment.

So it is to be readily seen that the disposition of this case must be determined by what is meant in the by-laws and constitution of the association by the expression "notify all members by postal card of assessments," and what the members of the association understood such expression in the constitution and by-laws to mean. The evidence is conclusive and undisputed that no other kind of notification had ever been given by the association; the members thereof had always acted theretofore upon such notice, and this was the sixteenth time such notification had been required since the organization of the company. If the language of the constitution and by-laws had been, "shall notify the members of the association

by mailing to each of them a postal card notifying them of the death of a member, and no other notice shall be necessary," and calling for the assessment, there would be no question as to whether mailing such notification would be all that would be required to give the members of the association notice, and failure to comply with such notice would, in fifteen days, under the constitution and by-laws of the · association, determine the standing of members in the organization, and at the end of the fifteen days after such mailing, members who did not respond with the proper assessment would stand suspended from any benefits of the association.

Numerous cases are cited by appellant as authority for mailing the postal card giving appellee notice of the death of Kerr being all that is required, but we will mention only two of them, which are among the strongest authorities cited to support such view.

In Rogers v. Moore, 100 Tex. 220, 97 S. W. 685, it is specifically decided by the Supreme Court that under article 2366, Revised Statutes, as amended by the act of 1903 (Laws 28th Leg. p. 104), requirement that the officer "shall give the defendant or his attorney written notice of such sale [on foreclosure of tax lien] either· in person or by mail," is met by mailing the notice required to the defendant's address, although it was not received by him. Under this statute immense property rights are affected, without knowledge of the same at an inadequate price, and the decision is far-reaching as to property rights, yet we think it is a correct interpretation of the law, and not unreasonably onerous. A man knows that he must pay taxes upon his property, or it will be sold for his taxes. Again, if a man's property is sold for taxes at an unreasonable price, under the statute he has the right of redemption by paying·to the bidder double the amount of his bid, and thereby retaining his property. So the more inadequate the price paid, the cheaper the redemption, as is so tersely stated in the opinion by ·Justice Williams.

In New York Life Ins. Co. v. Scott, 23 Tex. Civ. App. 541, 57 S. W. 677, Justice Hunter, writing the opinion, specifically holds that where a life policy stipulated forfeiture by nonpayment of premiums . for 30 days, a premium due in June· not being paid after notice required by·law, as a condition to forfeiture, and where a premium due in September thereafter was received and placed to the insured's credit by the company's agent, who notified him that the policy had lapsed from nonpayment of the June premium, and its payment and a health certificate were necessary to reinstatement; and no such health certificate was sent, that the forfeiture by such nonpayment was not waived by the receipt of premiums. The notice in this case is provided for both by statute of New York

and by rules of the company. This was an ordinary life certificate, and the premiums became due thereon at fixed times, and therefore from the inception of the contract the insured knew that his obligation would fall due at a given time each year, even without any notice, and, we think, cannot be considered in the same class as the instant case, where a purse of money is put up by a number of individuals and no assessments are ever made, nor become due by the members of such association, until some member thereof dies. Equity and justice among the parties would demand that the members have notification, and an opportunity to comply with the assessment demand.

[1] It is insisted by appellant, and we think correctly so, that insurance contracts should be construed as other contracts; 'in short, that they should be literally construed. This rule of law is tersely upheld by Justice Brown in Brown v. Palatine Ins. Co., 89 Tex. 594, 35 S. W. 1060, wherein it is said:

"In the construction of policies of insurance, the same rules of law·will be applied as in the construction of contracts made between individuals *under like conditions* (italics ours), and no greater strictness is required in the performance of the one than the other."

The expression used by Justice Brown, "under like conditions" is by no means insignificant. Again, suppose we literally construe the contract, or rather the constitution and by-laws, which are directory only of the manner of notification of the members of death and assessment. The exact verbiage is "notify by postal card."

In Words and Phrases, pp. 4845–4846, the word "notify" is dealt with as defined by a number of the appellate and supreme jurisdictions of our land, construing the word literally, and in the case of Castner v. Farmers' Mutual Fire Insurance Company, 50 Mich. 273, 15 N. W. 452, the court held that the word "notify" in a charter of a mutual insurance company, providing that the members shall be notified of assessments by circular or verbally, means "inform." The mere mailing of a notice to a member is not sufficient if the notice is not actually received.

[2] Appellant places great stress on the acquiescence in the regulations of the association by appellee, in that she had theretofore received many of such notices through the mail, and that, therefore, by custom, she was bound by such method of notice. This presentation is not without merit, and is worthy of consideration, but would it not be as fair to say that, since appellee had received a number of such notices and had always complied with such notices, and the demand for the dues, therefore the association would be bound by the customary oft-repeated acts of the appellee in meeting the demands, and especially might serious consideration be given this when it is taken into consideration that for six months prior to the death of Kerr, Jordan had been suffering

with tuberculosis, and of which he died, and of whose early death the appellee in this case was surely apprised. In this connection, it might not be amiss to notice a part of the charge of the court, wherein he charged the jury that if the notice was mailed by Menefee to Jordan at his proper address, it is presumed to reach him. On the other hand, might it not be said with equal force that if Jordan did not get such notice, the law would presume that Menefee did not mail it. But the charge as given by the court on this phase of the evidence could not have militated against the interests of the appellant.

[3] Again, where questionable language arises in the constitution and by-laws of an insurance company or association and one may be repugnant to another, courts will always construe such discrepancy, or seeming discrepancy, to the benefit of the insured. Haywood v. Grand Lodge of Texas, K. P., 138 S. W. 1194.

[4] We think, as is contended by appellant in his brief, that the ordinary and usual understanding of the meaning of the term "notify by postal card" is to mail a postal card, and, as we have heretofore said, if other language, in addition thereto had been used in the by-laws and constitution, making the manner of notification mandatory, instead of directory, appellant's contention would have to be upheld, but we do not construe the language as used in the by-laws and constitution, wherein it says "notify by postal card," and then in another section provides for the automatic suspension of the member failing to respond to such notification, even though it be conclusively shown that such notice was mailed, to require a forfeiture of the contract. Aside from the correct principle of law that insurance policies and beneficiary certificates shall be liberally construed, and in case of ambiguity in the contract to be resolved in favor of the insured, we think in such a company or association as the one to which appellees' husband belonged, where no monthly or annual stipulated amounts are provided of which the members may take notice, but, on the contrary, no assessment is made save at the death of one of the members of the association, that the constitution and by-laws of said association ought to provide actual notice to each member, and, failing to do so, in no unmistakable terms, that the language as used in the constitution and by-laws of the appellant should be construed to mean "to make known," to bring to the knowledge of the party assessed; in short, to bring or place him in condition where he can, if he chooses to do so, comply with the conditions of the contract by paying the amount of the assessment against him. It opens too broad a field for wrongdoing on the one hand, and on the other hand restricts the rights and privileges to be derived from such a concern to too narrow scope. Suppose the sec-

retary of such an association, for mercenary reasons, should withhold such notification, and should go into court and swear that he mailed it. Suppose, again, that the United States mail in some way were destroyed, which does occur. Suppose, again, that the card miscarried, and went to some other post office, and finally, after making a circuitous route, reaches the beneficiary too late for compliance, which in so short a time as is mentioned in the constitution and by-laws of the association under consideration is not uncommon. Suppose, again, as the facts show might have been done in the instant case, the secretary mailed the card, and he unwittingly but perfectly honestly, mailed it to the wrong post office, and the beneficiary never received it. Would justice and equity stand with folded hands and blinded eyes and give its sanction to the beneficiary of such certificate, by no fault of his own, being deprived of that which the husband and father has labored to provide for them, and into which fund had theretofore paid 15 assessments for the beneficiaries of other brethren, and that he might leave his loved ones so provided at his death? We think not.

[5, 6] So believing, we hold that the honorable trial court did not err in his special issues Nos. 1 and 2, as presented to the jury, and that the special charge No. 1, as requested by the appellant, was properly refused.

There are five assignments of error, as presented, but they all hinge on the issues of the case hereinbefore discussed, and what we have said is a disposition of the case as presented. The case is ably briefed by both appellant and appellee, and many authorities are cited, but we have quoted from and cited in this opinion only a few that go direct to the issue presented. Whatever interpretation our courts may, in the future, place upon the word "notify," and whatever they may determine the clause "notify by postal card" to mean, we believe that under the facts of this case the jury has meted out justice, and that the verdict of the jury should not be disturbed, and the cause is therefore affirmed.

──────────────

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes