**NORTH RIVER INS. CO. v. THOMAS et al.**
(No. 6752.)

(Court of Civil Appeals of Texas. Austin. June 11, 1924. Rehearing Denied July 5, 1924.)

**1. Insurance** ⬡⟹133(1)—**Law that life policy must contain entire contract not extended to fire insurance.**

Rev. St. art. 4953, providing that life insurance policies shall contain entire contract, is not, by article 4955, which provides that all laws applicable to life, fire, marine, inland, lightning, or tornado insurance companies shall govern and apply to any other kinds of insurance, made applicable to fire insurance.

**2. Insurance** ⬡⟹349(3)—**Right to stipulate for suspension of policy during default of premium notes follows from right to extend credit.**

The right to stipulate for suspension of policy during default in premium note necessarily follows from the right to extend credit and to make regulations dealing with collection of premiums, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4898, notwithstanding absence of any such provision in standard form of policy.

**3. Insurance** ⬡⟹349(3)—**Stipulation in premium note for suspension of policy on default held binding.**

Stipulation in premium note suspending policy on default in payment of note is binding, though not contained in policy.

**4. Insurance** ⬡⟹349(3)—**Insured school district bound by stipulation in notes executed by its trustees.**

Where trustees of school district executed premium notes in consideration of issuance of insurance policy, stipulation therein suspending policy on default in payment of notes was binding on insured, whether or not personal obligation of trustees, who signed notes, could be enforced against district.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by J. C. Thomas and others against the North River Insurance Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Critz & Woodward, of Coleman, for appellees.

McCLENDON, C. J. This was a suit by the trustees of the Oak Grove public school district No. 7, in Coleman county, Tex., against North River Insurance Company of New York, upon a policy issued by the company in favor of the school district for $1,000 covering loss by fire to a school building and its contents. The only question in the case is whether the policy at the time of the fire was suspended by virtue of nonpayment of a premium note which provided for suspension after maturity and pending default.

The case was tried to the court without a jury, and judgment was rendered in favor of the trustees for $921.53, the full amount of the policy, less the unpaid premium notes. From this judgment the insurance company has appealed.

The material facts in the case are without dispute. On October 8, 1921, the trustees applied to the local agent of the insurance company at McKinney, Tex., for two policies of insurance, the one in question and a tornado policy, each covering a period of

5 years from date of application. In an agreement upon which the parties went to trial, the following is stipulated:

"That in consideration of the execution of said policy of insurance, the plaintiffs herein paid as premium thereon in cash the sum of $18, and executed, payable to the defendant, four notes signed by the plaintiffs herein, each for the sum of $18, bearing interest from date at the rate of 6 per cent. per annum and due and payable October 8, 1922, 1923, 1924, and 1925, which said notes were given in payment of the deferred premiums both for the policy of insurance above set out and also for policy No. 2906342, insuring said property against loss or damage by windstorm, tornado, or cyclone. The above-described note due October 8, 1922, was in the following form and to the following effect, to wit: * * *

"'On or before the 8th day of October, 1922, for value received in policy No. 2904384–2906342 dated the 8th day of October, 1921, issued by the North River Insurance Company of New York, N. Y., we promise to pay to said company, or order, the sum of nineteen and 8/100 dollars with interest at the rate of 10 per cent. per annum after maturity, with expenses of collection and 10 per cent. attorney's fees. * * *'

"This note being given in payment of above policy of insurance, it is hereby agreed that if this note be not paid at maturity said policy shall be suspended, inoperative, and of no force or effect so long as this note remains overdue and unpaid. * * *

"C. A. Weddle,
"J. C. Thomas,
"Trustees Dist. No. 7."

(The omitted portions of the note are not material.)

There was no reference in the body of the policy to any premium notes, and no provision for suspension of the policy for nonpayment of premium; but attached to the policy was a rider upon which were listed the four premium notes. The fire occurred on November 1, 1922, at which time the first premium note was past due and unpaid.

At the time the policy was issued the state fire insurance commission had prescribed a uniform fire insurance policy which did not contain any provision with reference to forfeiture or suspension of the policy for nonpayment of premium or premium notes. It was shown, however, that in August and September, 1922, the Home Fire Insurance Company applied to the commission for authority to use the installment plan of premium payments in certain classes of policies. Section 24 of the Fire Commission Law (Vernon's Sayles' Ann. Civ. St. 1914, art. 4898) provides as follows:

"The provisions of this law shall not deal with the collection of premiums, but each company shall be permitted to make such rules and regulations as it may deem just between the company, its agents, and its policy holders; and no bona fide extension of credit shall be construed as a discrimination, or in violation of the provisions of this act."

A letter from the commission to the Home Company, dated August 15, 1922, referring to this section, reads:

"This provision of the law is clear and explicit, and this department now rules that insurance companies, when writing insurance at the rates prescribed by this department, are within their authority under the law, should they extend credit by accepting notes for deferred payment of premiums, such notes for deferred payments, in every instance, unless otherwise provided for in the schedules, to bear the legal rate of interest."

On September 28, 1922, the commission further wrote as follows:

"The department sees no objection to the insertion of the farm coverage of the home policies you inclosed and under the provisions of the law has nothing to do with the collection of premiums, and consequently we raise no objection to the premium note provision contained on those policies, but the printed conditions of those policies must be in conformity with the printed conditions of the Texas standard fire policy."

## Opinion.

If the quoted provision in the premium note is a part of the insurance contract, then without question the policy was suspended at the time of the fire; and recovery cannot be had. This rule is universal, so far as we have been able to discover, and was recently restated by the Commission of Appeals in Duncan v. Insurance Co., 254 S. W. 1101.

[1] Appellees contend that the stipulation in the note was not a part of the insurance contract for the several reasons which follow.

Revised Statutes, arts. 4953 and 4955, read:

"Art. 4953. Every policy of insurance issued or delivered within this state on or after the first day of January, 1910, by any life insurance company doing business within this state, shall contain the entire contract between the parties, and the application therefor may be made a part thereof."

"Art. 4955. All the provisions of the laws of this state applicable to the life, fire, marine, inland, lightning, or tornado insurance companies, shall, so far as the same are applicable, govern and apply to all companies transacting any other kind of insurance business in this state, so far as they are not in conflict with provisions of law made specially applicable thereto."

It is contended that article 4953, which applies expressly only to life insurance companies, is by article 4955 made applicable to all other insurance than life, including fire. The contention is based upon the use of the disjunctive conjunction "or" between the words "lightning" and "tornado insurance"; the contention being that the expression "any other kind of insurance business," refers respectively and disjunctively to each of the six kinds of insurance named, and not to

those six kinds of insurance collectively. Under this construction of the article, all statutes applicable to life insurance apply to every other character of insurance, including fire, marine, inland, lightning, and tornado, all statutes applicable to fire insurance apply to all other kinds of insurance, including life, marine, etc., and so on. We do not think article 4955 should be so construed. The natural meaning of the language is that the statutes governing each of the six kinds of insurance companies named shall, as far as applicable, govern all companies transacting insurance business other than of the kinds already enumerated. The purpose of article 4955 was, we think, to apply the several provisions of the statutes governing the six named kinds of insurance, wherever applicable, to such other kinds of insurance as might be written in the state which were not controlled by specific legislation. The construction placed upon the article by appellees would lead to interminable confusion, a result which the Legislature could hardly be presumed to have intended. Only a strained construction of the article will admit of such interpretation of its language.

[2] The contention is made that, since the suspension clause contained in the note was not embodied in the uniform policy adopted by the state fire insurance commission, it was void. The cases relied upon in this regard are all based upon statutes of other states, in which the Legislature itself has provided the form of policy to be used. The Oklahoma case of Insurance Co. v. School District, 174 Pac. 513, is directly in point, holding that a suspension clause for nonpayment of premium, embodied both in the policy and in the premium note, is void where the statutory uniform policy contains no such provision.

Whenever the question has arisen, so far as we have been able to find, it has been uniformly held that the power to prescribe a uniform policy and to render all provisions of policies not in conformity therewith nugatory is a legislative function, which cannot be delegated to any other board or official. 26 C. J. 56, 57; O'Neil v. Ins. Co. (1895) 166 Pa. 72, 30 Atl. 943, 26 L. R. A. 715, 45 Am. St. Rep. 650; Anderson v. Assurance Co. (1894) 59 Minn. 182, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609, 50 Am. St. Rep. 400; Dowling v. Ins. Co. (1896) 92 Wis. 63, 65 N. W. 738, 31 L. R. A. 112; Ins. Co. v. Perkins (1905) 19 S. D. 59, 101 N. W. 1110; King v. Ins. Co. (1905) 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87.

In so far as foreign insurance companies are concerned, however, it was held by this court, in an able opinion by the late Chief Justice Key, that the constitutionality of this law could not be questioned, since by obtaining permits to do business in this state they thereby, under Vernon's Sayles' Ann. Civ. St. 1914, art. 4876, accepted the provisions of the law as valid. Ins. Co. v. Dalton (Tex. Civ. App.) 178 S. W. 966. This holding was followed in Ins. Co. v. Gomillion (Tex Civ. App.) 178 S. W. 1050. A writ of error was refused in each of these cases.

In Insurance Co. v. Preston (Tex. Civ. App.) 238 S. W. 326, the same effect was given to the uniform policy adopted by the fire insurance commission as has been given in other states to uniform policies adopted by legislative act. That case is now under submission in the Supreme Court. The constitutionality of the insurance commission law on the ground that the Legislature could not delegate to the commission the power to prescribe a uniform policy does not seem to have been raised in the case.

Independently of this question, however, which has been concluded as to foreign insurance companies by Ins. Co. v. Dalton, above, it seems clear to us that the insurance commission has correctly construed section 24 of the law creating it (Vernon's Sayles' Ann. Civ. St. 1914, art. 4898) as not delegating to the commission matters relating to the collection of premiums. That article expressly authorizes each company "to make such rules and regulations" in this regard "as it may deem just." The right to extend credit for premiums is expressly given, and declared not to constitute a discrimination or violation of the law. The matter of collecting premiums is expressly declared not to be within the provisions of the law. Clearly the right to stipulate for the suspension of a policy during default in a premium note necessarily follows from the right to extend credit and to make regulations dealing with the collection of premiums, and we so hold.

[3] It is further contended by appellees that, since the suspension stipulation appears only in the note and not in the policy, it is nugatory. In this connection we quote from 26 C. J. 269:

"Nor will such provision, appearing only in the note given for the premium be sufficient, although there is authority to the contrary."

In support of the first proposition in the text quoted, the cases of Ins. Co. v. Stancell, 94 Ark. 578, 127 S. W. 966, and Ins. Co. v. Hardie, 37 Kan. 674, 16 Pac. 92, are cited, and to the contrary Hale v. Ins. Co., 148 Mich. 453, 111 N. W. 1068, and Ins. Co. v. Canedy, 36 Okl. 733, 129 Pac. 865, 44 L. R. A. (N. S.) 376. We have carefully examined these cases and do not find that any of them supports the proposition that where the suspension stipulation is contained only in the note it is not a part of the insurance contract, and therefore unenforceable.

In the Arkansas case the policy was in favor of the wife and the note was given by the husband, individually, and under circumstances which the court found amounted to an absolute payment of the premium;

the insurance company accepting the husband's responsibility in lieu of the premium.

In the Kansas case the stipulation in the note provided that nonpayment at maturity should avoid the policy "as provided in said policy," which contained no provision for avoidance under such contingency. The court held that:

"The condition mentioned in the note was to have effect and be in force according to the terms of the policy, and as the policy contains no provisions for forfeiture, and is inconsistent with such a theory, the condition of the note must be held to be nugatory."

The Michigan case seems to be directly in point, and holds that such stipulation in the premium note, although not contained in the policy, is a part of the insurance contract and enforceable. The same is held in the Oklahoma case, although the question was not essential to the decision of the case.

Where no statute governs the question, it is generally held that a note given in payment or part payment of an insurance premium constitutes a part of the insurance contract, and its provisions are as binding upon the parties as any other provision of the contract. Ins. Co. v. Chowning, 8 Tex. Civ. App. 455, 28 S. W. 117; Ins. Co. v. Knight of Tabor, 32 Tex. Civ. App. 328, 74 S. W. 809; Ins. Co. v. Bowen (Tex. Civ. App.) 102 S. W. 163; Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204.

The following quotation is from the opinion of the Supreme Court of the United States in the Lewis Case:

"The delivery of a policy of insurance and the payment of the premium are reciprocal or concurrent considerations. Necessarily, therefore, the payment of the premium can be exacted simultaneously with the delivery of the policy. Of course, such payment can be waived and a note—the credit of the assured—accepted, either absolutely or upon conditions. And we do not see how it can make any difference where the conditions are expressed—whether in the policy, in the note or in the receipt given for the premium, or whether on the face of the latter or on its back. The agreements of parties may be expressed in many papers, and if the connection of the papers is not apparent it may be shown by parol. The present case does not even need the aid of that rule. The receipt expressed the conditions upon which the note was received—unmistakably expressed them. The receipt of the premium was expressed to be 'subject to the terms of the contract and the conditions on the back' of the receipt. And the assured was directed to read the notice upon the back of the receipt. The notice was as follows: 'If note be given for the payment of the premium hereon or any part thereof, and same is not paid at maturity, the said policy shall cease and determine.'

"It is not contended that it was not competent for the company to make the condition. It is asserted that it did not become a part of the contract upon which the minds of the parties met—that the minds of the parties only met upon the application, the policy and the note. We cannot assent to this view. The payment of the premium was a very essential thing, and the manner of its payment, whether in cash or by note, and provision for the payment of the note and the effect of its nonpayment, were also essential things, and necessarily must have been of mutual concern to the parties and upon which their minds must be considered as having met. To hold otherwise would be to hold that the parties were indifferent to that which materially concerned them. It was certainly of concern to the assured to know whether he would be indebted upon an overdue note or whether his insurance had lapsed."

Goddard v. Insurance Co., 67 Tex. 69, 1 S. W. 906, 60 Am. Rep. 1, and later cases by the several Courts of Civil Appeals following it, which appellees cite, deal with the effect of riders which contain waranties affecting the validity of the policy. The question in those cases is entirely different from that at bar. Here the stipulation which the insured contends is not a part of the insurance contract was in a note executed by the insured at the time the policy was issued, and as part of the consideration for the policy.

[4] Appellees further contend that the stipulation in the note was not binding upon the school district or the trustees, for the reason that the note does not purport to be the act of the district or the trustees, but merely bound the two signatory trustees individually, and further because no power existed in the district or the trustees to create a binding obligation by executing a promissory note. The agreed statement of facts is to the effect that the plaintiffs herein executed "the four premium notes signed by the plaintiffs herein," and that they were executed in consideration of the issuance of the policy. Whether the notes were legally binding upon the trustees in their official capacity or upon the district is not material. They clearly, under the agreed statement of facts, constituted a part of the contract of insurance, and the stipulation was binding upon the insured whether or not the personal obligation in the notes could be enforced against them. Underwood v. Ins. Co., 108 Tex. 381, 194 S. W. 585; Ins. Co. v. Hopkins (Tex. Com. App.) 244 S. W. 989.

The undisputed facts in the case conclusively show that the policy was suspended at the time the loss occurred, and negative the right of appellees to recover.

The judgment of the trial court, therefore, is reversed, and judgment is here rendered in favor of appellant.

Reversed and rendered.