## UNITED STATES FIRE INS. CO. v. RYAN BROS. (No. 12034.)*

Court of Civil Appeals of Texas. Fort Worth. Oct. 20, 1928.

Rehearing Denied Nov. 17, 1928.

Hamp P. Abney, of Sherman, for plaintiff in error.

Hopkins & Koons, of Denton, and E. G. Senter, of Dallas, for defendant in error.

BUCK, J. Defendants in error, Ryan Bros., a firm composed of E. S. Ryan and E. H. Ryan, instituted this suit in the district court of Denton county upon a fire insurance policy issued by the United States Fire Insurance Company of New York, plaintiff in error. The petition is in the usual form, itemizing losses claimed to have been sustained by the burning of a barn of the defendants in error, said losses alleged to have aggregated the sum of $1,105. The defendant below alleged, in substance, that it was not liable because an installment due on the note given in part payment for the premium was past due and unpaid at the time of the fire, and that, by provision of the policy, as well as of the note, said policy was suspended during such time as any part of the note, or notes, was due and unpaid. The plaintiffs pleaded, first, that the note had been paid; second, that the defendant had waived its right to have the policy suspended by a letter; and, third, that the original premium was $72.20, the policy running for three years, beginning January 3, 1924, and that plaintiff had paid $33 when said policy of insurance was issued, and another payment of $32.92 was paid on December 12, 1924, and said two payments paid the premium up to and beyond the date of the fire.

The cause was tried before a jury on special issues, which issues, together with their answers, are hereinafter set out:

"1. What was the date of the fire in question? Answer: On the 27th day of Dec. 1925.

"2. What was the date of the filing of the proof of the loss? Answer: On the 7th day of January 1926.

"3. Was the property as shown in the schedule of the proof of loss, as introduced in evidence, destroyed by fire on the occasion in question? Answer: Yes.

"4. What was the reasonable cash market value upon the date of the fire of the oats destroyed, if you find and believe from the evidence that any were destroyed? Answer: $498.-00.

"5. What was the reasonable cash market value on the date of the fire of the baled hay destroyed, if you find and believe from the evidence that any was destroyed? Answer: $60.00.

"6. What was the reasonable cash market value on the date of the fire of the loose hay destroyed, if you find and believe from the evidence that any was destroyed? Answer: $30.00.

"7. What was the reasonable cash market value of the leather harness destroyed on the date of the fire, if you find and believe from the evidence that any was destroyed? Answer: $100.00.

"8. What was the reasonable cash market value of the chain harness destroyed on the date of the fire, if you find and believe from the evidence that any was destroyed? Answer: $380.00.

"9. What was the reasonable cash market value of the halters destroyed on the date of the fire, if you find and believe from the evidence that any halters were destroyed? Answer: $5.00.

"10. What was the reasonable cash market value of the double buggy harness destroyed by fire on the date of the fire, if you find and believe that any double buggy harness was destroyed? Answer: $20.00.

"11. What was the reasonable cash market value upon the date of the fire of the lap robes destroyed, if you find and believe that any lap robes were destroyed? Answer: $5.00.

"12. What was the reasonable cash market value of the single buggy harness destroyed on the date of the fire, if you find that any

---

*Writ of error dismissed.

single buggy harness was so destroyed? Answer: $5.00.

"13. What was the cash market value of the pitch forks destroyed on the date of the fire, if you find and believe from the evidence that any pitch forks were so destroyed? Answer: $2.00.

"14. What date did the First State Bank of Denton, through its officer or officers, notify the defendant, Insurance Company, if you find and believe from the evidence that it did notify said insurance company, that it would take care of the check in question given by the plaintiff to the defendant, Insurance Company, in payment of the premium note in question, if you find and believe from the evidence that said bank did agree to take care of said check? Answer: December 17, 1925."

Upon this verdict the court rendered judgment for $1,105 in behalf of plaintiff, and the defendant has appealed.

### Opinion.

The fire occurred on December 27, 1925. The evidence of E. S. Ryan shows he paid cash $33, and that $20 of said amount was payment on another policy; that on December 1, 1924, he paid the first note, and, on November 28, 1925, he sent a check for $27.51 to the company, at its Southern office at Atlanta Ga. This check was received, but it was later returned to the company unpaid because of insufficient funds, or no funds. The company then wrote to E. S. Ryan, at Denton, Tex., as follows:

"Dear Sir: Your check for $27.51 sent us in payment of your note for like amount under the above numbered policies, has been returned unpaid by your bank.

"This letter is to advise that we are today returning this check and if you wish your insurance to remain in force it is very necessary that you pay this check upon its arrival—if this check is returned unpaid a second time we shall be obliged to serve notice of cancellation of the policies.

"Yours very truly,
"United States Fire Insurance Co."

The check was sent a second time to the Denton bank, and was returned a second time unpaid. Mr. Ryan testified that he had arranged with an officer of the bank, W. C. Orr, to pay the check upon its second presentation, but that such officer failed to notify other officers or employees in the bank of such arrangement, and the check was returned to the insurance company a second time.

The evidence shows that the fire occurred on December 27, 1925. During the introduction of testimony, it was shown that, at the instance of one of the Ryans, and the day after the fire, to wit, December 28, 1925, John W. Crain, assistant cashier of the First State Bank of Denton, Tex., wrote the agents of the insurance company, at Atlanta, Ga., the following letter:

"On December 17th we returned Mr. E. S. Ryan's check for $27.51 in error. Mr. Ryan had made arrangements with our cashier for the payment of this check but the bookkeeper failed to get the notice. You will please return same at once and it will be paid as it was not Mr. Ryan's fault that it was returned the second time.

"Hoping that this will be satisfactory with you, we are, yours very truly, [Signed] John W. Crain, Asst. Cashier."

While the jury found that this letter was written on December 17th, the mistake in the jury's finding is doubtless due to the fact that the defendant company did not have the original letter at the time of the trial, but only a copy thereof, and the date of the letter was blurred or obscured. On a motion for rehearing, the original letter was introduced, showing the date to be December 28, 1925, the day after the fire. The letter as shown in the statement of facts is of date December 28, 1925.

The policy provides that:

"It is expressly agreed that this company shall not be liable for any loss or damage that may occur to property herein described for which any promissory note or obligation, or part thereof, given for premiums, remains past due and unpaid."

The note had a similar provision, which was as follows:

"This note being given in payment of above policy of insurance, it is hereby agreed that if this note be not paid at maturity said policy shall be suspended, inoperative and of no force or effect so long as this note remains overdue and unpaid."

The undisputed evidence shows that the second note, given in part payment of the premium on the policy, was not paid at the date of the fire, and was never paid. Upon receipt of the letter from the bank, hereinabove set out, to the effect that the check had been returned the second time by mistake, and that the bank would pay the same upon its third return, the company had been notified of the fire, and, of course, did not return the check for payment. Where a policy of fire insurance, for which the insured has given his note for part of the premium, and the note provides that if any part of such premium remained unpaid when due, the insurer's liability for the loss during the period of default shall be suspended, such provision in this character of case exempts the insurer from liability. See Duncan v. United Mutual Fire Ins. Co., 113 Tex. 305, 254 S. W. 1101, on certified question from this court. Justice Hamilton, of the Commission of Appeals, in his opinion says:

"Provisions in policies for suspension of risk during default in payment of premium notes after due date have been held to render the policy automatically inoperative with delinquency, and so to continue until re-instated by payment, by overwhelming weight of authority. The whole subject of the provisions suspending insurance during default in payment of premiums or assessments as affected by failure of insurer to declare a suspension before loss is

discussed and copiously annotated and authorities fully cited in a note to Continental Ins. Co. v. Stratton, 8 A. L. R. 391, the annotation beginning on page 395 and that portion applying where provisions for suspension are in the policy only and are not in the note beginning on page 406. In all cases we have found the suspension clause has provided for suspension during default of payment of a premium note. * * * But, if a provision that failure to pay a premium note shall suspend the risk during the default period has the effect to suspend the risk, we see no reason why a provision such as the one quoted in the certificate shall not have the same effect. It is said that no act need be done to declare a forfeiture. Equitable Life Assurance [Soc.] of U. S. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625. Much less is there necessity to declare a suspension of risk where the policy provides for it and where the contingency upon which the suspension depends has occurred."

See Liverpool & London & Globe Ins. Co. v. Baggett, 275 S. W. 313, writ of error refused, by the Austin Court of Civil Appeals; North River Ins. Co. v. Thomas, 264 S. W. 589, also by the Austin Court of Civil Appeals, affirmed in (Tex. Com. App.) 277 S. W. 1041.

Nor do we think that any waiver of the provision in the policy and in the note, above referred to, is shown by the letter, written by the company to E. S. Ryan, supra. Defendant in error argues that the expression, "If you wish your insurance to remain in force, it is very necessary that you pay this check upon its arrival," constitutes a waiver of the provision. We do not think so. The policy as a policy may remain in force, yet to be subject to suspension. The policy provides:

"This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that when this policy is cancelled by this company by giving notice it shall retain only the prorata premium."

Therefore, by the terms of the policy, the insurer could cancel the policy by giving five days' notice to the insured, and it was this provision that the letter of December 14, 1925, supra, referred to, in which the company wrote the insured, "If your check is returned unpaid a second time, we shall be obliged to serve notice of cancellation of the policy." Nor do we think that any weight should be given to the promise of the cashier of the bank, given to E. S. Ryan, that the bank would take care of the check if it was returned the second time. At most, this was an arrangement between the bank and its customer, and did not bind the insurance company.

We conclude that the insurance company's request for peremptory instruction should have been granted and judgment rendered on the undisputed evidence for the defendant below. The judgment is reversed, and judgment is here rendered for plaintiff in error.