## SOVEREIGN CAMP, W. O. W., v. JOHNSON et al.

### Motion No. 7591; No. 7845.

Court of Civil Appeals of Texas. Austin.

June 9, 1933.

Appellee's First Motion for Rehearing Overruled July 29, 1933.

Appellee's Second Motion for Rehearing Granted Oct. 18, 1933.

Bank's Motion for Rehearing Overruled Nov. 17, 1933.

McCartney & McCartney, of Brownwood, for appellant.

A. E. Wilson and Callaway & Callaway, all of Brownwood, for appellees.

GAY, Special Associate Justice.

This suit was instituted by appellee Mrs. Cora Johnson, the beneficiary, against appellant, Sovereign Camp, Woodmen of the World, and the First National Bank of Brownwood, Tex., upon a beneficiary certificate issued by appellant to appellee's husband, Jonathan D. Johnson, on October 5, 1898. If it was in force at the time of his death on January 11, 1930, the certificate had a value of $1,212.68, but appellant contended that the certificate had become void because of the failure to pay the assessments due thereon for the months of October, November, and December, 1929, which assessments, it is conceded, were never paid. Under the terms of the beneficiary certificate and appellant's constitution, laws, and by-laws to which it was subject, a member was automatically suspended unless his monthly assessment was paid during the month, and until his reinstatement his beneficiary certificate was void. It is thus apparent that, on account of the failure to pay said monthly installments, no right of action existed upon the certificate, in the absence of facts showing waiver or estoppel.

Appellee relies upon the following facts as showing that appellant is estopped to assert a forfeiture of the certificate: Mr. and Mrs. Johnson had moved away from Brownwood in 1908, but he continued his membership in appellant's camp at Brownwood, and continued to carry an account in the First National Bank of Brownwood. From the time of the removal from Brownwood in 1908 to the month of August, 1929, the clerk of appellant's camp at Brownwood each month presented the receipt for Mr. Johnson's current assessment to the bank, whereupon the bank paid the assessment and charged it to his account. It appears that Mr. Johnson had never executed any instrument in writing authorizing the payment of his assessments in that manner, but they were invariably paid in that way, and not a single assessment was paid in any other manner during that period so far as the record shows. In August, 1929, however, the bank notified the clerk of the Brownwood camp that no such payments would be made in the future without express written authority from the depositor. The bank then furnished the clerk with signature cards to be sent to Mr. Johnson and to other members whose dues had been paid in like manner, the execution of which cards would have enabled the clerk to draw against the several accounts for the dues of the members.

The Woodmen clerk at Brownwood, Brown Garrett, testified that on August 10, 1929, he mailed to Jonathan D. Johnson at Vance, Tex., a letter reading as follows: "The banks are requiring that we get your authority to draw draft on your account for your insurance, so we are enclosing a card and ask that you sign your name on the top line where

ink dash appears. Please sign and return at once. Yours very truly, B. H. Garrett, Clerk, W. O. W., Box 173, Brownwood, Texas."

Appellee admitted that her husband received the letter from Mr. Garrett, and that they discussed the matter together, although she thought it had been received in October instead of in August. Being unwilling to give the clerk unlimited authority to draw against the account, Mr. Johnson requested appellee to write a letter to the bank requesting it to continue to pay the Woodmen dues on presentation of the receipt by the clerk. She testified that she wrote such a letter, properly stamped and mailed it; the officials of the bank testified that no such letter was ever received.

The writing of the letter to the bank was the only attempt made by Mr. Johnson or appellee to communicate with any one after the receipt of Mr. Garrett's letter. They did not directly reply to the letter, nor did they make any effort to ascertain whether or not the letter written by appellee was actually received by the bank. Although the bank had stated that no further assessments would be paid until it received written authority to do so, it nevertheless paid the August and September assessments. It refused, however, to pay the assessments for October, November, and December, and default and suspension followed.

On the other hand, Mr. and Mrs. Johnson received no further communication from the bank or from the clerk, and they assumed that all assessments were being paid by the bank. It was only after Mr. Johnson's death that appellee learned that the October, November, and December assessments had not been paid. It is true that about November 18 appellee received a bank statement containing a receipt for the September assessment, but no receipt for the October assessment. A careful examination of the statement and its inclosures would have disclosed that the October dues had not been paid. It is further true that Brown Garrett testified that on November 10 he sent Mr. Johnson a notice of suspension, which was not returned to him, but appellee testified that the notice was never received. There is no reason to believe that Mr. Johnson deliberately quit paying the assessments on his certificate after keeping it in force for thirty years, and we are justified in assuming that he thought the dues were being paid by the bank. There was at all times sufficient money in the bank to pay the October, November, and December assessments.

While appellee contended that the above circumstances created an estoppel against appellant, she sought judgment against the bank because of its failure to continue the payments in the event it should be held that appellant was not estopped to assert a forfeiture of the certificate. In a trial to the court without a jury, judgment was rendered in favor of appellee against appellant, Sovereign Camp, Woodmen of the World, and she was, of course, denied recovery against the bank. She has not appealed from the judgment in favor of the bank, and that portion of the judgment is, accordingly, not before us for review. No findings of fact or conclusions of law were filed by the trial court.

Appellant's principal contentions are (1) that, under its constitution, laws, and by-laws, and under article 4846, R. S. 1925, it could not in any event be estopped by the acts or omissions of the clerk of the local camp; and (2) that the facts are not sufficient to show an estoppel.

The first of these contentions is, in our opinion, unsound, for, while it is true that the clerk of the local camp is a special agent with limited powers, he is, nevertheless, expressly authorized, and it is made his duty, to collect the assessments and dues from the members. The entire conduct of the clerk upon which appellee relies to show an estoppel arose in connection with his duty to collect dues from the members, and it is our opinion that, while he was so acting, appellant was bound by his acts. We do not mean to say that appellant would be responsible for any act of the local clerk except those done in carrying out the functions specifically delegated to him, but within the limits of that authority we are of opinion that appellant would be bound by his acts. In the case of Sovereign Camp, Woodmen of the World, v. Putnam (Tex. Civ. App.) 206 S. W. 970; 973, the member had changed his occupation to that of saloon keeper, which under the rules of the Sovereign Camp required the payment of an increased assessment. This change of occupation was well known to the clerk of the local camp, but he made no attempt to collect the increased dues. The Sovereign Camp contended that it was not estopped to claim a forfeiture of the certificate, for the reason, among others, that the clerk could not estop it by his acts. The court disposed of that contention in the following language: "The receiving of notice of Putnam's change of occupation and the collection of additional assessments resulting thereby were among the powers vested in the local camp clerk under the by-laws, and the Sovereign Camp cannot evade responsibility for, or escape the consequence of, acts done by him which are necessarily and inseparably connected with the performance of the duties devolving upon him."

So, in this case, the clerk of the local camp was vested with the power to collect dues and assessments from the members, and, within the limits of that authority, the Sovereign Camp is bound by his acts and by his failure to act. The case of Supreme Lodge, Knights of Pythias, v. Withers, 177 U. S. 260, 20 S.

Ct. 611, 44 L. Ed. 762, while not in point on the facts, contains an excellent discussion of the relation between supreme lodges or head camps and the officials of subordinate lodges or camps.

■ There is considerable confusion in the decided cases with regard to the extent to which a supreme lodge can be estopped by the acts of the officials of subordinate lodges, but we believe that in most instances any conflict is more apparent than real. At all events, it is our opinion that, within the narrow bounds of their limited authority, the local officials can by their acts estop the head camp. We do not believe that our conclusion is in conflict with the case of Sovereign Camp, Woodmen of the World, v. Jackson (Tex. Civ. App.) 264 S. W. 289, 291, for that case simply recognizes the general rule that "local officials * * * have no authority as such to bind the head camp or authorities of such lodge by agreements, representations, or acts of estoppel *outside the scope of their limited agency*." (Italics ours.) A reading of the authorities cited by the court in support of its conclusion will show that it did not intend to hold that under no circumstances could the head camp be estopped by the acts of its local officials. We would therefore have no difficulty in affirming this case if the record showed any conduct on Brown Garrett's part within the scope of his limited agency sufficient to raise an estoppel.

■ We have reached the conclusion, however, that the trial court erred in holding that the conduct of the local clerk was sufficient to raise an estoppel. This conclusion has been reached reluctantly, for we are loath to deny to appellee the benefits of the insurance upon which she and her husband had paid the premiums for thirty years, when the only default consisted of failure to pay three monthly premiums of $2.20 each. Nevertheless, the contracting parties stipulated in the contract of insurance that such default would have that effect, and we are bound to hold that the certificate was forfeited unless appellant's agent was guilty of acts which would estop it to assert a forfeiture. The principle of estoppel is a salutary one, promoting justice and fair dealing. It is essentially an appeal to the conscience of the court, and it ordinarily involves some element of wrongdoing on the part of the person sought to be estopped which would render it inequitable to permit him to take advantage of his prior conduct. It applies to insurance companies and fraternal benefit societies to the same extent, and to the same extent only, that it applies to natural persons.

Appellee relies upon the following definition of equitable estoppel, contained in 21 Corpus Juris, 1113: "This (equitable) estoppel arises when one, by his acts, representa-tions, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts."

As shown by the foregoing definition, one may be estopped not only by what he does or says, but as well by what he fails to do or say. Obviously, any estoppel in this case must rest on Brown Garrett's failure to speak, and it is axiomatic that mere silence will not estop unless there were both an opportunity and a duty to speak. 10 Ruling Case Law, 692.

At what time did Brown Garrett remain silent when it was his duty to speak out? Certainly not at the time the bank notified him that the old arrangement would not be continued, for it is conceded that he actually notified Jonathan D. Johnson of the bank's requirement. Granting that a duty rested upon him to notify Mr. Johnson that a new arrangement must be made, that duty was performed, and, in the absence of additional circumstances, there was certainly no duty on him to give a second notice or to insist that a new arrangement be made. It would unquestionably have been a friendly act on his part if he had continued to write Mr. Johnson insisting that a new arrangement be made, but, in our opinion, there was no duty on his part to do so. It may be argued that he should have known that Mr. Johnson wished to continue the payments, and that there was at least a duty on him to ascertain whether or not the letter was received. There would be some force in such an argument if there were any doubt that the letter was received, but inquiry would have revealed only that he had a right to assume that the letter had been received. Furthermore, there was not, in any event, any greater duty on him to ascertain whether or not Mr. Johnson had received his letter than there was on Mr. Johnson to ascertain whether or not appellee's letter to the bank had been received.

The circumstances relied upon by appellee as raising an estoppel are certainly no stronger than the circumstances in the case of Bennett v. Sovereign Camp, W. O. W. (Tex. Civ. App.) 168 S. W. 1023, in which case it was held that the Sovereign Camp was not estopped to assert a forfeiture of the certificate. A writ of error was refused in that case. Since each case of estoppel must rest on its own particular facts, we do not consider that the citation of additional authorities would be of any benefit. We hold that, under the well-recognized rules of estoppel, appellant was not estopped to assert that the certificate was forfeited, under the evidence adduced at the trial in the court below.

The essential, and to us controlling, feature of the case is that Jonathan D. Johnson actually received notice of the fact that the old arrangement was no longer in force and that some other arrangement must be made for the payment of future assessments. It was then incumbent on Mr. Johnson to make a new arrangement for the payment of his assessments either personally or through an agent. He might have attempted to make a new arrangement through Brown Garrett, as, for example, by requesting him to attempt to persuade the bank to continue the former arrangement in force, in which event there might have been a duty on Mr. Garrett to make such an attempt and to advise him of the result of his efforts. He did not do so. He did not even reply to Brown Garrett's letter. He undertook to make a new arrangement with the bank without assistance from Brown Garrett or from any agent of appellant. He voluntarily selected the United States mails as the agency for making the new arrangement with the bank. If the testimony of the bank officials is to be believed, that agency failed him, and his letter was never received. In intrusting his letter to the mails, he voluntarily took the risk of nondelivery. Certainly, if he had mailed a check for his assessment, and the check had been lost in the mails, that fact would not prevent a forfeiture of the policy. Bailey v. Sovereign Camp, W. O. W., 116 Tex. 160, 286 S. W. 456, 288 S. W. 115, 47 A. L. R. 876. If he had had an agreement that the bank would pay his check though he did not have funds in the bank sufficient to cover the check, the bank's breach of its agreement would not have prevented the beneficiary certificate from lapsing. United States Fire Insurance Company v. Ryan Bros. (Tex. Civ. App.) 11 S.W.(2d) 395. If, on the other hand, the letter was received by the bank and the bank failed to comply with his request, then appellee's cause of action, if any, is against the bank.

We have carefully read the cases cited by appellee in support of the judgment, and in our opinion none of them militates against the conclusion we have reached. Most of them are cases like Sovereign Camp, Woodmen of the World, v. Putnam (Tex. Civ. App.) 206 S. W. 970, and Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101, in which the lodge recognized the beneficiary certificate as being in force after there was, in fact, a breach of its terms. and in such cases it is uniformly held that the lodge waived the right to forfeit the certificate.

Appellee lays much stress on the case of McCorkle v. Texas Ben. Ass'n, 71 Tex. 149, 8 S. W. 516. In that case, the agent of an insurance association had promised to draw on the insured for such assessments as might be levied against the policy, although he informed him that the company would not be bound by any drafts which he might draw.

Such drafts were drawn on at least two occasions, and, believing that drafts would be drawn for all future assessments, McCorkle made no attempt to pay his assessments by check. The agent, Parrott, failed to draw on him for an assessment, and the policy lapsed. The court held that the company was bound by the acts of the agent and was estopped to assert a forfeiture; that a reasonable construction of the declaration of Parrott to the effect that the company would not be bound by any draft that he might draw on McCorkle is that, if McCorkle failed to pay the draft, the company would not be bound by reason of the fact that Parrott had drawn it, but that McCorkle would be in the same attitude with reference to the company as if no draft had been drawn. The distinction between the cases is obvious: In the McCorkle Case, the member was depending solely on the agent of the company, while in the instant case the member had ceased to rely on the clerk and had undertaken to make his own arrangement with his agent for the payment of his dues.

It is our conclusion, as stated above, that the duty resting on Brown Garrett to notify Mr. Johnson of the bank's requirement was fully discharged when he actually notified him of that fact, and that, unless some new duty subsequently arose, there can be no estoppel in this case. There is some indication in the testimony of the president of the First National Bank of Brownwood that, before the bank finally refused to pay the October assessment, Mr. Garrett again undertook to secure the signature card from Mr. Johnson. The testimony is not satisfactory on this point, and we are not justified in saying that there was any such change in the situation as gave rise to a further duty on Brown Garrett's part to communicate with Mr. Johnson. It is in evidence that Mr. Garrett had numerous conversations with the bank officials after the conversation in which he was told that signature cards must be procured, and it is possible that, from some one of such conversations, a further duty arose. This point should be further developed upon another trial.

It is also shown by Mr. Garrett's testimony, without objection from appellant, that it was the duty of the Sovereign Camp to send to suspended members reinstatement blanks and forms of health certificates, the execution of which would entitle the member to reinstatement upon payment of the delinquencies. Appellee testified that no such blanks were received from the Sovereign Camp. In the present condition of the record, we are not justified in holding that such a duty in fact rested upon appellant or that such duty was not discharged. If there was a duty on appellant to give Mr. Johnson an opportunity for reinstatement by sending him the proper forms, we hold, in line with

the well-recognized rule, that the duty was not discharged by merely mailing the forms to him, and that it was necessary that the forms actually reach him. Home Benefit Association of Angelina County v. Jordan (Tex. Civ. App.) 191 S. W. 725. Furthermore, it does not appear from the record that Mr. Johnson would have been able to take advantage of the opportunity for reinstatement had such opportunity been given him. Upon another trial, this phase of the case should be more fully developed.

Believing that the trial court erred in holding that appellant was estopped to assert a forfeiture of the beneficiary certificate, we hold that the case should be reversed and remanded for another trial, and it is so ordered.

Reversed and remanded.

## On Motion for Rehearing.

In a second motion for rehearing, appellee, Mrs. Cora Johnson, earnestly insists that, if the case is not to be affirmed, it should be reversed generally, and that we committed error in not reversing the judgment in favor of First National Bank in Brownwood. While the proper disposition of the motion is by no means free from doubt, we have concluded that the motion for rehearing should be granted.

■ Mrs. Johnson sued appellant upon a beneficiary certificate, asking for no relief against the bank except "in the alternative only and in the event it should be held for any reason" that she was not entitled to recover against appellant. The trial court was of opinion that she was entitled to judgment against appellant, and in accordance with that opinion he rendered the only judgment which could properly have been rendered on that phase of the case—a judgment in favor of the bank. The judgment does not profess to pass on the merits of her claim against the bank, but recites that "since the plaintiff's cause of action as against the defendant, First National Bank in Brownwood, is in the alternative; that she is not entitled to recover any judgment against the defendant, First National Bank in Brownwood." Content with her judgment against appellant, Mrs. Johnson did not appeal from the judgment in the bank's favor, and we believe that there was no necessity for her to take an appeal.

The effect of that judgment is that there has been no adjudication of the merits of appellee's claim against the bank. The judgment clearly shows that no adjudication was made because the lower court believed (erroneously, as we have held) that on the facts as developed she was entitled to recover against appellant. The judgment in favor of the bank having been rendered on an erroneous premise, it should be reversed in order that the merits of her claim against it may be adjudicated. As we construe them, the authorities give us the right to reverse the judgment in favor of the bank, although no appeal was taken therefrom.

■ The Supreme Court, in the case of J. M. Hamilton & Co. v. Prescott, 73 Tex. 565, 11 S. W. 548, 549, has stated the rule applicable to such cases as follows: "We think the conclusion to be deduced from these apparently conflicting cases is that this court, when it finds error in the proceedings of the lower court as to any party to the judgment, and not as to another, and that a proper decision of the case as to one is not dependent upon the judgment as to the other, will reverse in part and affirm in part; but, where the rights of one party are dependent in any manner upon those of another, it will treat the judgment as an entirety, and, where a reversal is required as to one, it will reverse the judgment as a whole."

Following this case and the case of Reeves & Lester v. McCracken, 103 Tex. 416, 128 S. W. 895, our appellate courts have held with some consistency that, where the judgment is not severable, or where a reversal adversely affects the rights of a party not appealing, or where justice demands, the appellate court may, in reversing a judgment for a party who appeals, reverse the case as to those who do not appeal from the judgment of the trial court. 3 Tex. Jur. §§ 814, 815; Valce v. Joiner (Tex. Com. App.) 44 S.W.(2d) 983; Lipshitz v. Lindsay National Bank (Fort Worth Civ. App.) 33 S.W.(2d) 874 (writ refused); Mergenthaler Linotype Co. v. McClure (Tex. Civ. App.) 9 S.W.(2d) 198; Id. (Tex. Com. App.) 16 S.W.(2d) 280; Fidelity Oil Co. v. Swinney (Tex. Civ. App.) 254 S. W. 137. There are many other cases to the same effect, in none of which were the rights of the nonappealing party so strong as are the rights of appellee in this case.

We do not mean to say that the authorities uniformly support the above view, for there is ample authority for the contrary position, some of which are cited by the First National Bank in Brownwood in opposition to the motion. Such a case is Colorado & Southern Ry. Co. v. Hamm, 47 Tex. Civ. App. 196, 103 S. W. 1125. The contrary view is also well expressed in the majority opinion of the Eastland Court of Civil Appeals in Farmers' National Bank v. Dublin National Bank, 55 S.W.(2d) 567. In a dissenting opinion, however, Chief Justice Hickman takes the position that an appellate court has the authority to protect the rights of a nonappealing party where those rights arise solely from the disposition which the court makes of the case, and that it may, accordingly, reverse the case generally in order to do justice to a nonappealing party. An examination of the docket of the Supreme Court discloses that an application for a writ of

error has been granted in that case with the notation, "We are inclined to agree with the dissenting opinion."

Since the judgment in favor of the bank was grounded solely on the judgment against appellant, we hold that Mrs. Johnson was not required to assume the anomalous position of objecting to and appealing from a judgment which gave her the exact relief which she was asking. We do not believe that an appellate court is powerless to protect the rights of a nonappealing party whose rights have been adversely affected by the disposition which it makes of the case.

The motion for rehearing is granted, the judgment in favor of First National Bank in Brownwood is reversed, and the cause reversed generally for a new trial as between all the parties thereto.