# OCTOBER, 1923.

### W. T. DUNCAN v. UNITED MUTUAL FIRE INSURANCE COMPANY.

#### No. 3755.  Decided October 24, 1923.

#### (254 S. W., 1101.)

1.—Fire Insurance—Note for Premium—Non-payment—Contract.

A policy of fire insurance, for which insured had given his note for part of such premium, provided that, if any part of such premium remained unpaid when due, insurer would not be liable for loss during the period of default.  *Held*, that the giving of such note was not a payment of the premium; that by the terms of the policy failure to pay it when due suspended insurer's liability; and that insured could not recover for loss of the property during the period when he was in default in such payment. The parties had a right to so contract, and no declaration of a forfeiture or suspension of the risk by insurer was necessary.  (Pp. 309, 310).

2.—Same—Waiver of Default.

The suspension of liability· on an insurance policy during default in payment of a note for premium could not be waived by any act of insured and was unaffected by proof of efforts made by him to pay it.  (P. 310).

3.—Same.

Mere demand by insurer of payment of an overdue premium note will not waive forfeiture of the policy by its terms during the period of default. And acts of an agent of the company, even if authorized to waive such forfeiture, short of a demand for payment, but looking to that end, did not constitute such waiver.  (Pp. 310, 311).

4.—Fire Insurance—Premium—Part Payment.

A contract of insurance against fire for three years was an entire one procured by the entire consideration of the premium named, no part of which was by the contract apportioned to any part of the term.  Where the insurer's liability was by its terms suspended during default of insured in paying at maturity a note for part of the premium, the fact that the cash premium paid was sufficient to cover the period in which the loss occurred at short term rates did not avoid the effect of such default by insured in paying the note as effecting a suspension of insurer's liability.  (Pp. 311, 312).

Questions certified from the Court of Civil Appeals for the Second District, in an appeal from Montague County.

Duncan sued the United Mutual Fire Ins. Co., Judgment went for defendant in pursuance of a peremptory instruction, and plaintiff appealed. The Court of Civil Appeals, after first rendering an opinion reversing the case, on motion for rehearing certified to the Supreme Court the questions here considered. These having been referred to the Commission of Appeals for their opinion thereon, the same is here adopted by the Supreme Court as its answer.

*Chancellor & Bryan,* for appellant.

The evidence showed conclusively that the note was accepted as payment of the premium, and with the cash payment, showed the premium to be fully paid. Insurance Co. v. Cox (Okla.) 98 Pac., 552; Arnold v. Empire Mut. Annuity & Life Ins. Co. (Ga.) 60 S. E., 470; Michigan Mutual Life Ins. Co. v. Bowes, 51 N. W., 962; Massachusetts Benefit Life Ass'n v. Robinson, 30 S. E., 918; 19 Cyc., 773, note 76; Insurance Co. v. Mulky, 79 S. E., 482.

The evidence, if not sufficient for a peremptory charge for the plaintiff, was sufficient to have been submitted to the jury on the issue of agency and the authority of the agent to waive the provisions in the policy in regard to the purported provision of forefiture of policy for non-payment of premiums when due. Niagara Ins. Co. v. Lee 11 S. W., 1024; Northwestern Life Ass'n v. Findley, 68 S. W., 696; North American Accident Ins. Co. v. Bowen, 102 S. W., 163.

The evidence, if not sufficient for a peremptory charge for plaintiff, was sufficient to have been submitted to the jury on the issue of whether or not the provision for forfeiture of said policy was waived by extending the time of payment of said note or otherwise. Roberts v. Wichita Southern Life Ins. Co., 221 S. W., 268; Equitable Life Assur. Soc. v. Ellis, 147 S. W., 1152; Same case on Rehearing, 152 S. W., 625; Southland Ins. Co. v. Hopkins, 219 S. W., 263; Madsen v. Prudential Ins. Co. of America, 185 S. W., 1168.

Where an insurance company has received a sufficient amount to pay for protection for a period longer than had elapsed before the risk become payable, the company can not hold the policy void or cancel the policy for any reason without first returning the unearned premium.

*Benson & Benson,* for appellee.

The payment or giving of the note, although it constituted satisfactory payment of the premium until its due date, did not constitute payment of the premium in cash, and, to prevent a suspension of the terms of the policy, must have been paid in cash promptly upon its due date. Underwood v. Security etc. Co., 108 Texas, 381, 194 S. W.,

585; Texas Fire Ins. Co. of Waco v. Knights etc., 74 S. W., 809; National Life Insurance Co. v. Reppond, 81 S. W., 1012.

No waiver or extension, or attempted waiver or extension, by the agent Green was shown, and it was not shown that said agent attempted or professed in any way to make such extension or grant such waiver.

The appellant herein having elected to purchase the insurance policy for the premium evidenced by the note due October 1st together with the cash could not claim the existence of his insurance on a pro rata basis of the time paid by the cash payment thereof. Natl. L. Ins. Co. v. Manning, 86 S. W., 618.

MR. JUDGE HAMILTON delivered the opinion of the Commission of Appeals.

This case is presented on a certificate from the Court of Civil Appeals for the Second Supreme Judicial District reading as follows:

"The above styled and numbered cause is now before us on motion for rehearing. The plaintiff below sued on a policy, issued July 28, 1920, giving insurance of $1200 on plaintiff's house, $700 on the furniture in the house, and $100 on the smoke house. The policy was for a period of three years from date. Green, the agent for the company, lived at Bowie, and Duncan, the insured, lived near Sunset, in Montague county. The premium for the three years was $83.50, of which $43.50 was paid in cash and a note given for $40.00, due October 1, 1920. Green testified that perhaps some ten days prior to the maturity of the note, he mailed Duncan, to his proper address, a notice that the note was due October 1st, but Duncan testified that he was at home the latter part of September and did not receive such notice. About the last of October Duncan left his home on a trip to Oklahoma. While he was away, Green called at his house and talked with his wife, telling her that he wanted to see Duncan about the note given for his insurance; that the note was due October 1st. Mrs. Duncan told Green that Duncan was away looking for work and Green told her that it was all right, to tell him to come to town when he returned and see him. Green told her he was not worrying about the note. On Duncan's return home and on November 11th, Armistice day, he went to Bowie and called at the bank where Green had agreed to leave the note, but it appears that the note was not there. He then called at Green's office three times during the day, and found no one there. Duncan then went home and did not return to Bowie again prior to the fire, which occurred on November 27, 1920, resulting in a total loss of the property insured. Duncan testified that he went to Bowie for the purpose of paying off the note. He also testified that he did not know the due date of the note before he had been informed by his wife of what Green had told her, that it was due on October 1st.

"The trial court gave a peremptory instruction for defendant. The defendant in the court below and in this court based its defense upon the following provision in the policy:

" 'If the premium upon this policy is not paid in cash, and any part thereof remains unpaid, and is not paid when due, the company shall not be liable thereafter upon this policy for any loss or damage hereunder, during the default period, and if the company shall request payment by the insured of the deferred unpaid portion of the premium ·it shall not be taken or considered as a waiver on the part of the company of this provision of the policy relieving the company of any liability hereunder during the default of the insured to pay said unpaid portion of the premium to the company or its agent authorized to collect the premium.'

"In the original opinion, we reversed the lower court's judgment and rendered judgment for appellant. Our conclusion that there was error·in the judgment below was based upon the fact that the evidence showed that the cash payment was more than half of the total premium for the three years and therefore more than sufficient to pay for one year at the short rate. The fire occurred about four months from the date of the policy. Supporting our conclusion, we cited the case of Nebraska & Iowa Ins. Co. v. Christiensen, 29 Nebr.,·372, 45 N. W., 924, 26 Am. St. Rep., 407.

"Upon its motion for rehearing appellee cites a number of decisions from states other than Texas which tend to show that a provision such as is found in this policy is strictly construed, although the insured has paid prior to the loss more than enough premium to pay for the policy beyond the date of the loss.

"The evidence, we think, is sufficient to sustain the authority of the agent, Green, to extend the time of the payment of the note.· He testified:

" 'I write policies of insurance, deliver them myself, collecting the premiums and notes due. I am in shape to handle all these financial matters and am authorized by the company to issue and take care of these policies. When I take a note, I send it to the company. I sent this note to the company when I got back to the office. This note has been in my office for collection. I sent it back when the fire occurred.'

"The evidence shows that the policy was not in fact delivered to the defendant until after the fire, but that Green showed the policy to the defendant the day after the contract was made, when the defendant made him the cash payment.

"We are not thoroughly agreed upon what disposition to make of appellee's motion for rehearing, and deem it advisable to certify to your Honors the following questions:

"1. Under the facts stated, was plaintiff's policy suspended at the time the fire occurred, for failure to pay the $40.00 note when due?

2. Under the evidence of Mrs. Duncan, above started, is the question of an extension of the time on the note one of fact for a jury, and did the court err in giving a peremptory instruction for the defendant?"

The negotiable promissory note of a debtor does not amount to payment of the indebtedness for which it was given unless the circumstances show that such was the intention of the parties. McGuire v. Bidwell, 64 Texas, 43, 45; Johnson v. Amarillo Implement Co., 88 Texas, 509, 31 S. W., 503; Wettermark v. Burton, 30 Texas Civ. App., 511, 70 S. W. 1030. There is nothing in the certificate to indicate that Duncan's note was intended, by the parties, to amount to payment of the balance of the premium, except the mere execution and delivery of it. This is not sufficient to show that it was so intended.

The premium was not paid in cash. Only a part of it was paid in cash. If the balance was not paid by the note, such balance remained unpaid. Under the authorities above quoted we are compelled to hold that the balance was not paid by the note. Since the note was not paid when due, a part of the premium was not paid when due. Since the note was due and unpaid before and at the time the fire occurred, an equivalent amount of the premium was due and unpaid before and at the time the fire occurred. By the plain terms of the policy, the company was not liable for any loss or damage thereunder after the unpaid portion of the premium became due, so long as it was unpaid, unless the company has waived its right under the clause of the policy set up as a defense. A fair and reasonable interpretation of that clause is that the parties intended by its provisions that nonpayment of the unpaid portion of the premium should have the effect of suspending the obligation to pay for any loss that might occur during the default in payment of the premium, and that, upon its payment, the policy should be revived, and in full force. The parties had a right so to contract. The provision was not contrary to any law or to public policy. It was evidently inserted for a legitimate purpose— to aid in securing prompt payment of the premium. It could work no injury to the plaintiff except by his own fault or negligence. Such injury would not be due to the provision of the policy, but to his own default.

Provisions in policies for suspension of risk during default in payment of premium notes after due date have been held to render the policy automatically inoperative with delinquency, and so to continue until re-instated by payment, by overwhelming weight of authority. The whole subject of the provisions suspending insurance during default in payment of premiums or assessments as affected by failure of insurer to declare a suspension before loss is discussed and copiously annotated and authorities fully cited in a note to Continental Ins. Co.

v. Stratton, 8 A. L. R., 391, the annotation beginning on page 395 and that portion applying where provisions for suspension are in the policy only and are not in the note beginning on page 406.

In all the cases we have found the suspension clause has provided for suspension during default of payment of a premium note. The clause in the policy involved in the case under consideration refers only to the premium and does not refer to a premium note. But, if a provision that failure to pay a premium note shall suspend the risk during the default period has the effect to suspend the risk, we see no reason why a provision such as the one quoted in the certificate shall not have the same effect. It is said that no act need be done to declare a forfeiture. Equitable Life Assurance Co. of U. S. v. Ellis, 105 Texas, 526, 147 S. W., 1152, 152 S. W., 625. Much less is there necessity to declare a suspension of risk where the policy provides for it and where the contingency upon which the suspension depends has occurred. We think the risk of the insurance company was suspended upon Duncan's failure to pay the note on the due date and that no liability for the loss attached unless the company had waived its rights secured by the clause quoted in the certificate.

The issue of waiver is not to be determined by what Duncan did or did not do. It should be considered only in the light of what the company did. Duncan had no power to waive the suspension and his conduct could have had no probative force upon the question as to what the company did or intended to do, or upon the effect to be given its action. "It alone had the power to waive. Its action alone could constitute waiver. Waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement, or be sustained by a consideration; nor is it essential that it be based upon an estoppel." Equitable Life Assurance Co. v. Ellis, supra. What did the company do to waive the rights secured to it by the clause of the policy under consideration? Granting that Green had authority to extend the time of the payment of the note, which we do not need to pass on, and do not decide, are any acts of his shown in the certificate sufficient to extend the time of the payment of the note or to constitute a waiver of the rights conferred by the suspension clause. We think not. The certificate shows that Green testified that he mailed Duncan a notice that the note was due October 1st. This was all he did before the maturity of the note. He called at Duncan's house and "talked with his wife, telling her that he · wanted to see Duncan about the note given for his insurance; that the note was due October 1st. Mrs. Duncan told Green that Duncan was away looking for work and Green told her that it was all right, to tell him to come to town when he returned to see him. Green told

her he was not worrying about the note.'' This is all the certificate shows Green did after the maturity of the note. None of this even shows that Green demanded payment of the note. It is held by our Supreme Court that a mere demand for the payment of an overdue premium note will not waive the forfeiture of the policy; Cohen v. Continental Fire Ins. Co., 67 Texas, 325, 60 Am. Rep., 24, 3 S. W., 296. The subject of unsuccessful attempt to collect premium as waiver of forfeiture is discussed and the authorities collated in a note appended to Iles v. Mutual Reserve Life Ins. Co., 18 L. R. A. (N. S.), p. 902. If a demand for the payment of an overdue premium note will not waive the forfeiture of a policy, then certainly less than a demand for the payment of a premium note will not waive a suspension of risk during the default of its payment. There was no waiver by the company in this case, and no evidence of extension of time on the note.

We do not think the suggestion that the cash payment should be applied to the first part of the three years' term of insurance, and was, therefore, sufficient to pay for insurance at the short rate beyond the date of the fire and that therefore the policy should be regarded as paid at date of the fire, is tenable. Whether it is tenable or not must be determined by the terms of the contract. According to the certificate, the company agreed to insure Duncan against loss by fire for a period of three years for a premium of $83.50 ''of which $43.50 was paid in cash and a note given for $40.00 due October 1st, 1920.'' That is to say, there was one entire, indivisible term of insurance for and in consideration of one entire, indivisible premium. No part of the cash procured the insurance for any particular portion of the time, but the entire insurance was procured by the entire consideration. Robinson v. German Ins. Co., 51 Ark., 441, 4 L. R. A., 251, 11 S. W., 686; German-American Ins. Co. v. Divilbliss, 67 Mo. App., 500. The certificate contains no suggestion that the contract furnished any intimation of a guide by which any part of the premium could be apportioned to any part of the term. To hold that the cash payment was to be applied to the first part of the term and the note or unpaid portion of the premium was for a later part of the term would be to make a contract for the parties different from the one they made themselves..

As we understand the opinion in the Nebraska & Iowa Ins. Co. v. Christiensen, cited in the certificate, it was not based on the fact that ''more than enough had been received by the defendant to carry the risk past the date of the fire, at the customary short rates,'' though that fact is adverted to by the court, but upon the holding that there was ample evidence of waiver of the condition of the policy relating to the payment of premium and a fair submission of that question to the jury.

We feel compelled, by the facts set out in the certificate and by the law applicable thereto, to recommend that the first question be

answered in the affirmative and that the second be answered in the negative.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

C. M. Cureton,
Chief Justice.