### LIVERPOOL & LONDON & GLOBE INS. CO., LIMITED, OF LONDON, ENGLAND, v. BAGGETT. (No. 6849.)

(Court of Civil Appeals of Texas. Austin. May 13, 1925. Rehearing Denied June 24, 1925.)

**1. Insurance ⬥134(2)—Omission of agent's report from copy of application immaterial.**

The omission from copy of application for fire policy of agent's report contained on back of original application was immaterial, as such report was not essential part of application.

**2. Insurance ⬥650—Copy of application not containing name of applicant not in compliance with statute, and inadmissible.**

Purported copy of application for fire policy attached to policy, not containing copy of name of applicant, *held* not in compliance with Rev. St. 1911, art. 4951, and hence was inadmissible.

**3. Insurance ⬥151(2)—Language of policy held to include copy of application as part of it.**

Notwithstanding copy of application for fire policy was inadmissible, because not·containing copy of name of applicant, provision in policy that it was subject to such other conditions as were indorsed or added to it included as part of policy copy of application, which was attached to policy, and hence insured was bound by provisions in copy as to default in payment of premium note.

**4. Insurance ⬥349(3)—Policy held to have lapsed prior to loss by reason of insured's failure to pay premium note when due.**

Under provision in application attached to fire policy constituting part of it that failure to promptly pay note given for premium when due suspended policy, *held* that, where loss occurred after premium note was due, such policy had lapsed, and insured could not recover therefor.

**5. Insurance ⬥151(1), 349(3)—Note given in payment for premium simultaneously with issuance of policy became part of insurance contract; provision suspending policy for nonpayment of note held valid.**

A note given by insured as part payment for premium on fire policy simultaneously with issuance of policy became part of insurance contract, and provision therein that failure to pay note when due suspended policy was binding and effective.

**6. Insurance ⬥133(1)—Statute prohibiting insurer from making any agreement other than as expressed in policy inapplicable to fire policies.**

Rev. St. 1911, art. 4954, prohibiting insurer from making any agreement other than as expressed in policy issued, and article 4955 apply only to life insurance companies, and are inapplicable to fire insurance companies.

**On Rehearing.**

**7. Estoppel ⬥58—That one asserting estoppel misled to his injury essential element.**

One of essential elements of estoppel is that party asserting it must have been misled or caused to change his position to his injury.

**8. Insurance ⬥141(3)—Provision in policy held not to estop insurer from asserting that policy lapsed for nonpayment of premiums.**

Provision in fire policy that for stated sum insured was insured for three years *held* not to estop insurer from asserting that policy lapsed for nonpayment of premium, in that insured gave note for part of premium, and, under provisions in policy, it had lapsed on insured's failure to pay note when due.

Error from District Court, Milam County; John Watson, Judge.

Action by C. W. Baggett against the Liverpool & London & Globe Insurance Company, Limited, of London, England. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

Thompson, Knight, Baker & Harris, of Dallas, for plaintiff in error.

W. A. Morrison, of Cameron, for defendant in error.

BAUGH, J. This was a suit by C. W. Baggett against the Liverpool & London & Globe Insurance Company, Limited, hereinafter designated as the insurance company, upon a policy issued by said company to Baggett on July 31, 1919, for $2,750, of which $1,500 was on his house at Tracy, in Milam county, Tex.; $500 on household goods; and the balance on other property with which we are not concerned here. This policy was to run for three years from its date. There is no dispute as to the material facts in the case. The premium recited was $84.-50 for the entire period. Baggett paid the premium for the first year in cash, and gave an installment note for the other two years' premiums due $31.53 on August 1, 1920, and $28.16 on August 1, 1921. This note contained, among other provisions, the following:

"It is understood and agreed that the company shall not be liable under the policy named above for any loss occurring after the maturity of any premium installments if any of same be in default. Upon nonpayment of any of the premium installments at maturity, the policy shall lapse and cease and continue to be void as a protection against loss, for such nonpayment during such nonpayment."

Neither installment of this note was ever paid. On March 9, 1922, the house and furniture were destroyed by fire. The case was tried to the court without a jury, and judg-

---

ment rendered for plaintiff for $1,924.93, being the $2,000 insurance, less $75.07 due and unpaid on the installment note. From this judgment the insurance company has appealed.

The only question involved is whether or not the policy in question, according to its terms, and the terms of the installment note given for the second and third year premiums, had lapsed at the time of the fire for nonpayment of premiums.

The policy sued upon appears to be a standard fire policy. In addition to the printed form, containing the general provisions, there were attached to it three slips, or papers, as follows: The first slip contained a description of the property insured. The second was a rate and analysis slip, giving the rates which applied to the particular property according to its description. The third was an exact copy of the application signed by Baggett, except that it did not show his signature thereto, nor contain on the back thereof the report of the agent to the insurance company, which appeared on the original application. In the original application just above Baggett's signature, and in the slip attached to the policy, appeared the following provision:

"If any promissory note given for the whole or any portion of the premium for the policy that may be issued upon this application shall not be paid promptly when due, then said policy shall be suspended, inoperative, and of no force or effect until such promissory note is paid. This company shall not be bound by any act done or statement made by or to any agent, or other person which is not contained in this, my application."

There also appeared in the body of the policy on the front page thereof the following provision:

"This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on the back hereof, which are hereby specially referred to and made a part of this policy, together wtih such other provisions, agreements, or conditions as may be indorsed hereon or added hereto. * * *"

The trial court held the third slip or paper referred to above—that is, the purported copy of Baggett's application attached to the policy—inadmissible and not a part of the policy because it did not contain the name of Baggett nor the report of the agent to the company on the back thereof. In doing so he doubtless concluded that it did not comply with article 4951, R. S. 1911, which reads in part as follows:

"Every contract or policy of insurance issued or contracted for in this state shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto."

[1] The omission from the paper of the agent's report on the back of the original application is immaterial. That report was not an essential part of the application. It could have as well been made on an entirely separate and distinct blank; nor are any of the statements, representations, or provisions of said agent's report offered in evidence or relied upon to defeat the policy. If they had been, then an entirely different case would be presented. Such, in fact, was the case in Southwestern Surety Co. v. Hico Oil Mill (Tex. Com. App.) 229 S. W. 479, cited by defendant in error. In that case the surety company sought to avoid the policy on representations made by a third party, separate and apart from those made in the application and which were not attached to nor made a part of the policy. See, also, National Live Stock Ins. Co. v. Gomillion (Tex. Civ. App.) 178 S. W. 1050.

[2] This, then, leaves the question: Does the failure to include in the purported copy of the application attached to the policy the name of the applicant preclude its admission in evidence as a part of the policy? No Texas case on this point has been cited, and we have found none. Appellee cites the case of Seiler v. Life Ass'n, 105 Iowa, 87, 74 N. W. 941, 43 L. R. A. 537, which follows the case of Dunbar v. Insurance Co., 72 Wis. 492, 40 N. W. 386. Those cases expressly held that "the signature is an essential part of the application, and all that is essential in the original should appear in the copy," and excluded the purported application for that reason. The statutes of those states, as does article 4951, R. S. 1911, expressly provide that a copy of the application should be attached to the policy. It is true that the Texas statute does not provide a penalty for failure to do so, as do the Iowa and Wisconsin statutes, but failure to comply with the statute excludes from the evidence the document, which fails to meet its requirements any way. See Southwestern Surety Co. v. Hico Oil Mill, supra, and cases therein cited. The Iowa and Wisconsin cases both relate to life insurance policies. There are cogent reasons why a more rigid rule should be exacted in life insurance policies, where the applicant is usually dead when the contest arises, and innocent parties are beneficiaries, than in fire insurance policies, where the applicant is usually living and is also the beneficiary. However, the Legislature has not seen fit to make such a distinction. The language of the statute is general in its terms, and includes all policies or contracts of insurance of whatever kind. We are not prepared to dissent from the rule laid down in the Iowa and Wisconsin cases, and therefore hold that the purported application did not comply with article 4951, R. S. 1911, in that it did not contain the copy of the name of applicant thereon, and was therefore inadmissible on that

ground. We must admit, however, in doing so that, where the identical information contained in the original application is attached to the policy in the purported copy, and was at all times in the hands of the insured, and the insurance company introduces the original application on the trial disclosing that fact, we fail to see where any injury could be done the insured, or any good reason for such a rule

[3] We are of the opinion, however, that the language in the policy, i e., "this policy is made and accepted subject to the foregoing stipulations and conditions * * * together with such other provisions, agreements or conditions as may be indorsed hereon or added hereto, * * *" was sufficiently definite and comprehensive to include, as a part of the policy, the purported copy of the application excluded by the trial court. This rider, however, was attached to the policy at the same time, in the same manner, and in connection with the rate analysis sheet, and the rider describing the property itself, fully described the property insured, the indebtedness thereon, and contained the questions asked insured and his answers thereto, in addition to the forfeiture provision. We are of the opinion, therefore, that it was a part of the policy, and that the insured was bound by its provisions with reference to any default in the payment of the premium note.

[4] That being true, this case comes clearly within the rule laid down in Duncan v. United Mutual Fire Insurance Co., 113 Tex. 305, 254 S. W. 1101. In that case Judge Hamilton discussed this question in the following language:

"The premium was not paid in cash. Only a part of it was paid in cash. If the balance was not paid by the note, such balance remained unpaid. Under the authorities above quoted we are compelled to hold that the balance was not paid by the note. Since the note was not paid when due, a part of the premium was not paid when due. Since the note was due and unpaid before and at the time the fire occurred, an equivalent amount of the premium was due and unpaid before and at the time the fire occurred. By the plain terms of the policy, the company was not liable for any loss or damage thereunder after the unpaid portion of the premium became due, so long as it was unpaid, unless the company has waived its right under the clause of the policy set up as a defense. A fair and reasonable interpretation of that clause is that the parties intended by its provisions that nonpayment of the unpaid portion of the premium should have the effect of suspending the obligation to pay for any loss that might occur during the default in payment of the premium, and that, upon its payment, the policy should be revived, and in full force. The parties had a right so to contract. The provision was not contrary to any law or to public policy. It was evidently inserted for a legitimate purpose—to aid in securing prompt payment of the premium. It could work no injury to the plaintiff except by his own fault or negligence.

Such injury would not be due to the provision of the policy, but to his own default."

[5, 6] The policy in question had also lapsed at the time of the fire under the provisions contained in the installment note given by Baggett for the second and third year premium. Even if there had been no provision for forfeiture in the policy itself, and the note alone had contained the provisions upon which it would lapse, the same result would obtain, for the reason that the note, given as part payment for the premium simultaneously with the issuance of the policy, became a part of the insurance contract. This identical question was passed upon by this court in the case of North River Ins. Co. v. Thomas (Tex. Civ. App.) 264 S. W. 589, and is there fully discussed and authorities cited. Further discussion is unnecessary, and would only prolong this opinion. The same question is also incidentally considered in Duncan v. Ins. Co., supra. Appellee urges that article 4954, R. S. 1911, wherein it provides that "nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as expressed in the policy issued thereon," precludes the insurance company from asserting its forfeiture provision contained in the premium note. This contention is untenable. The provision in article 4954 applies expressly to life insurance companies. Though not raised by appellee here, it was contended by appellant in the case of Insurance Co. v. Thomas, supra, that under article 4955 all provisions of the statute relating to life insurance, so far as applicable, govern and apply to fire insurance as well and vice versa. This question was likewise fully gone into by this court in the Thomas Case, supra, and we pretermit a discussion of it here.

Since the policy sued upon had lapsed at the time of the fire, the judgment of the trial court must be reversed and judgment here rendered for appellant.

Reversed and rendered.

### On Rehearing.

[7, 8] In his motion for rehearing appellee complains that the court did not, in its opinion, specifically dispose of his plea of estoppel urged against the insurance company's contention that the policy lapsed for nonpayment of premium. The first paragraph of the policy sued upon contained the following provision:

"The Liverpool & London & Globe Insurance Company, Ltd., in consideration of the stipulations herein named and of eighty-four and 50/100 dollars premium, does insure C. W. Baggett for the term of three years from the 31st day of July, 1919, at noon to the 31st day of July, 1922, at noon against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding twenty-seven hundred fifty dollars."

Appellee contends that this provision is in effect an acknowledgment of payment by the company of the premium named, and that by reason thereof the insurance company is estopped to deny payment for the purpose of forfeiting the contract, citing articles 4953–4955, R. S. 1911; Dunken v. Life Ins. Co. (Tex. Civ. App.) 221 S. W. 691; and Berryman v. Southern Surety Co., 285 Mo. 379, 227 S. W. 96. We adverted to the articles of the statutes in our opinion herein. We also read carefully not only the cases cited but a number of the cases cited therein, and reached the conclusion that they were not in point here. The Dunken Case was twice before this court, and was reversed on the ground that, in the process of converting a short term life insurance policy into a longer term policy, and the. conduct and correspondence of the agents with the insured with reference thereto, and in which the policy was delivered and the insured died before payment of premium, there was sufficient evidence of waiver on the part of the insurance company to go to the jury. In the 'Berryman Case an accident policy was involved. The recital in the policy as to premium was similar to that in the instant case. In that case, however, the agent habitually made monthly remittances to the insurance company of premiums on policies delivered during the month. The local agent had paid to the insurance company in his monthly remittal the premium on the policy delivered to Berryman, had neglected to collect same from Berryman, but had credited him personally for that amount. Shortly thereafter, and before Berryman had paid the agent, he was killed. The evidence showed that he had offered to pay the agent a few days before, but that the agent was in a hurry, told him to let it go, and he would come to Berryman's office and get the money. The insurance company had received the premium on the policy before the death of Berryman. The court held that under these facts it was estopped to assert a nonpayment of the premium. We think it is clear that neither of these cases is analogous to the case before us.

We do not consider the recital quoted as a receipt for the premium, but merely as indicating the amount required to pay for the amount of the insurance therein set out. As between the insurance company and Baggett no estoppel can apply. One of the essential elements of estoppel is that the party asserting it must have been misled or caused to change his position to his injury. Baggett could not complain of this. He knew he had paid cash on his premium only for the first year. For the remaining two years of the premium he had only given his notes, which were long past due, and which he knew he had not paid. Failure to pay these notes when due was a failure to pay the balance of the premium for those years. Duncan v. United Mutual Fire Ins. Co., 113 Tex. 305, 254 S. W. 1101, and cases there cited. To that extent the consideration for the policy had failed, a fact which he well knew. Hence the insurance company was not estopped to show its suspension.

Appellee's motion is therefore overruled. Overruled.