**SOUTHWESTERN LIFE INS. CO. v. POWERS.**

**No. 4991.**

Court of Civil Appeals of Texas. Texarkana.

Nov. 26, 1936.

Rehearing Denied Dec. 17, 1936.

McBride, Hamilton, Lipscomb & Wood, of Dallas, for appellant.

Butler & Price, of Tyler, for appellee.

JOHNSON, Chief Justice.

Appellee, Ruth Powers, sued appellant, Southwestern Life Insurance Company, to recover the face value of a policy of life insurance in the sum of $2,500 and statutory penalty and attorney's fee.

Appellee alleged that the policy was issued July 19, 1926, to and upon the life of Joe M. Powers, brother of appellee, the named beneficiary, whereby appellant promised and became liable and bound to pay appellee $2,500 upon the death of Joe M. Powers; that Joe M. Powers died October 14, 1933.

The petition further alleges that at the time of the death of Joe M. Powers "the policy was in full force and effect, or at least was in full force and effect as a contract or policy of extended insurance for $2500, he, the said Joe M. Powers, having complied will all the provisions and conditions of the policy."

Demand for payment and denial of liability was alleged, and that the statutory period of time after refusal to pay had run, thereby authorizing recovery of statutory penalty and attorney's fee.

Appellant answered by general demurrer and general denial.

Trial to the court without a jury resulted in judgment for appellee, from which appellant has perfected its appeal.

Appellant defended the suit on the grounds, stated in substance, that the policy was forfeited for default of insured in the payment of two notes claimed by appellant to have been executed and accepted in extension of the time of payment, as distinguished from payment or satisfaction, of the third and fourth annual premiums; that, each of the notes, as appellant contends it had the right to do under their provisions, was canceled after its maturity date and (partial payments having been made) the unpaid balance of the premium for which each note was given was advanced and paid under the automatic premium loan provision of the policy, which transactions consumed the entire reserve or automatic loan value of the policy to the end of the fourth policy-year, July 19, 1930, at which time, there being no further premiums paid or otherwise settled, all liability of the company terminated, being prior to the death of the insured. Upon which grounds, and under appropriate assignments of error, appellant asserts that the trial court judgment was error and should be reversed and judgment here rendered for appellant.

Appellee contends, in substance, that the notes constituted binding obligations on the part of the insured to pay appellant the amount of principal and interest, and upon default, the attorney's fees, as stipulated in the notes, and should be held to have satisfied the premiums for which they were given; and that appellant had no right or option to choose whether it would enforce payment of the notes or treat the policy forfeited for default in their payment and advance the amount in payment of the premiums under the automatic premium loan provisions of the policy, thereby reducing the reserve which otherwise would have been available and sufficient to extend the insurance beyond the date of the death of the insured.

The pertinent provisions of the policy read:

"*Automatic Premium Loans*—If at any time after the expiration of the second policy year and while this Policy is in full force, any premium or installment of premium shall not be paid or settled in any other way within the time allowed for its payment, the Company, unless otherwise instructed in writing by the Insured, will forthwith advance the amount of such premium, or instalment of premium with interest thereon at the rate of six percent per annum payable in advance, as a loan against this Policy, provided the loan value hereof shall be sufficient to secure such loan with any other existing indebtedness and interest in advance on the total debt until the next premium or instalment thereof becomes due. Premiums falling due thereafter will in like manner be so advanced and paid by the

Company and this Policy so continued from time to time as long as the loan value hereof, after deducting all indebtedness and interest, is sufficient to pay a quarterly premium on this Policy. At any time while this Policy is thus continued in force, payment of premiums may be resumed by the owner of the Policy without medical re-examination and all the rights of the Insured under this Policy will remain in full force and effect, subject only to the indebtedness hereon, the same as if premiums had been paid in cash by the Insured. In any settlement of the Policy, the indebtedness to the Company hereon shall be a first lien in priority to the claim of any beneficiary or assignee. Such loan may be repaid at any time, but failure to repay it shall not avoid the Policy until the total indebtedness thereon shall equal or exceed the loan value, in which case this Policy shall automatically cease and determine.

*"Other Non-forfeiture Provisions*—If default shall be made in the payment of any premium or premium note after payment of premiums for three full years (there being no default if such premium has been advanced under the Automatic Premium Loan privilege above described) then

*"(Automatic Feature)*—1. Without any action on the part of the Insured, this Policy shall be extended as a Policy of Paid-up Term Insurance (without loan or surrender value) for an amount equal to the principal sum insured hereunder less all existing indebtedness to the Company on the Policy, and for such term as the face value of the Policy after deducting all existing indebtedness to the Company on the Policy, will purchase, when taken as a net single premium.

*"Table of Loan and Non-forfeiture Values.* If there be no indebtedness upon the Policy, the Loan and Non-Forfeiture values available thereunder will be as follows:

| Number of Years Premium Paid. | Column 1 Loan Value Cash Value. | Column 2 Paid-up Term Insurance and Survivorship benefit. | | Column 3 Paid-up Life Insurance. |
|---|---|---|---|---|
| | | Years | Days | |
| 1 | 35 | | | |
| 2 | 62 | | | |
| 3 | 90 | 2 | 251 | 175 |
| 4 | 137 | 3 | 315 | 262 |

Appellant showed by testimony of its vice president and actuary, Everett G. Brown, to the effect, that the first and second annual premiums were fully paid by the insured; that for the third annual premium due July 19, 1928, insured executed a note due November 19, 1928; that upon partial payments being made by insured the note was extended from time to time, the last extension being due August 15, 1929; that on September 5, 1929, the note—not being paid—was canceled and the unpaid balance for which it was given was advanced and paid under the automatic premium loan provisions of the policy, and the canceled note and premium receipt marked "Paid after extension and paid by automatic loan" was sent to insured; that for the fourth annual premium, due July 19, 1929, insured executed a note due October 19, 1929; that upon partial payments being made by insured this note was extended from time to time, the last extension being due April 19, 1930; that on May 2, 1930, the note—not being paid—was canceled and the unpaid balance of the premium for which it was given was advanced and paid under the automatic premium loan provisions of the policy, and the canceled note and premium receipt marked "Paid after extension, paid by automatic loan" was sent to insured. That the last-mentioned transaction of May 2, 1930, consumed the entire reserve or loan value ($137) to the end of the fourth policy year, July 19, 1930, at which time, there being no further premiums paid or settled, the insurance terminated.

▇▇▇ The witness testified that the notes provided for 6 per cent. interest and for 10 per cent. attorney's fee, and that the notes contained the following special provisions: "That if it were paid on or before maturity such payment would then be accepted by the Company as payment of the premium for which it was given; and if not paid at maturity, the policy thereupon automatically and without notice would become forfeited and all liability on it cease." The notes were not introduced in evidence.

In 24 Tex.Jur. 875 § 147, it is said: "As previously stated (Sec. 146) a premium note may constitute payment or it may merely evidence the debt representing the premiums. In determining into which class a particular note falls, the test is the intention of the parties. Duncan v. United Mutual Fire Ins. Co. [113 Tex. 305], 254 S.W. 1101; 3 Couch on Insurance, Sec. 651." Acceptance of the notes in question by appellant may, as contended, raise the presumption that they were received in satis-

faction of the premiums for which they were given; but if the special provisions of the notes are to be regarded as binding on the parties, such presumption is overcome. For the provisions of the note as testified to by appellant show that it was not the intention of the parties that the note should be treated as payment of the premium; but as having the effect to extend the time of payment of the premium to the maturity date of the note, and that if the note was paid on or before maturity, "such payment would then be accepted by the Company as payment of the premium for which it was given." Likewise the provisions of the notes speak for themselves the further agreement of the parties that default in payment of the note at maturity would forfeit the policy. The question therefore is: Do the provisions in the note constitute an enforceable agreement between the company and the insured? We answer the question in the affirmative upon the following authorities:

In Texas Life Ins. Co. v. Cork (Tex. Com.App.) 89 S.W.(2d) 779, 780, it is said:

"The immediate effect of the giving of the premium note by the insured was not to pay the third annual premium, as found by the trial court; but by the terms of the note itself the effect was to continue the insurance in force until midnight of the due date of the note, October 17, 1930. The note stipulates what its effect will be if paid on or before its due date, and what it will be if not so paid. * * *

"The provisions of the note constitute a binding and enforcible contract between the company and the insured, notwithstanding it was made subsequent to the issuance of the policy and its terms are not set out in the policy."

In Pacific Mutual Life Ins. Co. of California v. Thurman (Tex.Com.App.) 89 S.W. (2d) 202, 203, it is said: "The provision (in the premium note) referred to is part of an agreement made subsequent to the issuance of the policy, and neither the provision of article 4732, R.S.1925, nor the similar provision of article 4953 (now 5050), Rev.St.1911, both of which require the policy to contain the entire contract between the parties, has application thereto. State Mutual Ins. Co. v. Rosenberry (Tex.Com. App.) 213 S.W. 242; Southland Life Ins. Co. v. Hopkins (Tex.Com.App.) 244 S.W. 989, 992."

From Southland Life Ins. Co. v. Hopkins (Tex.Com.App.) 244 S.W. 989, 992, we quote:

"It was held in State Mutual Insurance Co. v. Rosenberry (Tex.Com.App.) 213 S. W. 242, that article 4953, requiring the policy to contain the entire contract between the parties, has no application to agreements between the insurer and insured made subsequently to the issuance of the policy. This, we think, is the correct construction of that statute. It is supported by the weight of decision in other jurisdictions. * * *

"But aside from these considerations, the extension agreement represented by the note was binding upon the insurance company, regardless of whether it violated either or both the statutory articles invoked. American Nat. Ins. Co. v. Tabor [111 Tex. 155] 230 S.W. 397. And if the insurance company was bound, then clearly the insured was bound also. If the latter is permitted to invoke the extension agreement, and avoid the consequences of lapse by virtue of failure to pay the premium in accordance with the terms of the policy, the insured must take the extension agreement charged with its burdens and well as clothed with its benefits. If held valid for one purpose, it must be held valid for all purposes. If void as to the obligations imposed on the insured, it is void as to the benefits accruing to the insured."

In disposing of the question under authority of the above cases we have not overlooked the fact that the notes executed by insured, Powers, in this case are not shown to contain express provisions that they shall constitute an indebtedness on the policy, as did the notes in the above-cited cases, but regardless of that distinction, the provisions in the Powers' notes evidences an agreement, held to be a binding contract, to the effect that the note was executed and accepted, not in payment, but in extension of the time of payment of the premium for which it was given, and that default in payment of the note forfeited the policy. Appellant therefore was within its rights upon default in payment of the note to treat the policy as forfeited and then under the automatic loan provisions to charge the note, or more properly speaking, the pre-

mium for which it was given, to the reserve of the policy. In 24 Tex.Jur. 865 § 140, the rule is stated: "An insurer may stipulate for the prompt payment of the premium due, and provide a forfeiture by way of penalty to ensure such stipulation. Where a policy is by its terms forfeited on failure of the insured to pay the annual premium on the stipulated day, time of payment is of the essence of the contract, and default therein works a forfeiture."

In Underwood v. Security Life & Annuity Co. of America, 108 Tex. 381, 194 S.W. 585, 588, it is held: "The contention is that as the policy itself did not provide for its forfeiture for a failure to pay a note given for a premium due would render the policy null and void, the recitals in the note and in the receipt to that effect would not be binding upon the beneficiary in the policy, who is the plaintiff in error. We think this contention should be overruled. The policy provided that a failure to pay any premium due would render it null and void. In other words, on such failure to pay any premium due the policy would, ipso facto, forfeit. We think the note given represents the premium, and takes its place in the contract. It is the equivalent of the premium, and should be treated as such when the note itself preserves substantially the provisions of the contract which relate to a failure to pay the premium for which it was given."

The judgment of the trial court therefore was error, unless it is sustained under a counter proposition presented by appellee which we will now discuss.

Appellee has properly presented the contention, stated in substance, that the general denial was insufficient as a pleading to support appellant's defense which we have above discussed; that forfeiture of the policy for failure to pay the note constituted an affirmative defense, which must be specially pleaded by defendant; and that in support of the trial court's judgment it must be presumed that the trial judge disregarded appellant's evidence for want of pleading to support the affirmative defense which the evidence was offered to establish.

■■ It appears that appellee's contention is well taken. Payment of the notes or premiums here in question was not a condition precedent to the taking effect of the contract of insurance. Regardless of the distinction, if any, of whether it be regard- ed that the contended forfeiture resulted from failure to pay the notes or from failure to pay the premiums for which the notes were given, in either event the facts upon which appellant seeks to avoid the contract go to work a forfeiture for failure of insured to comply with conditions subsequent, held to constitute an affirmative defense, required to be specially pleaded. "All affirmative defenses must be specially pleaded such as * * * that the policy had been forfeited for non-payment of premium." 37 Cor.Jur. 610, § 400. "Matters which must be pleaded affirmatively and specially include: * * * a lapse or forfeiture of the policy for non-payment of premiums or assessments." 33 Cor.Jur. 88, § 802. In Mullen v. Mutual Life Ins. Co., 89 Tex. 259, 34 S.W. 605, 606, it is said: "The forfeiture [for failure to pay premium] of a policy being an affirmative matter, and a defense resting peculiarly within the knowledge of the defendant, and one that it could either waive, or insist upon at its pleasure, we think that it should have been required to specially plead the forfeiture before introducing proof of the same. We are aware of the liberal rules of pleading which prevail in this state, but we think no precedent can be found which would justify the introduction of evidence of the forfeiture of a life insurance policy under a general denial."

■ Appellant contends that the allegations in appellee's petition, namely, "that the policy was in full force and effect, or at least in full force and effect as a policy of extended insurance, and that all the provisions and conditions of the policy had been complied with," relieved appellant of the requirement to allege the facts constituting its defense. We do not think appellant's contention can be sustained. The allegations referred to in appellee's petition are not allegations of facts; they merely express conclusions of the pleader, as referable to the establishment of appellee's case in the first instance. Such conclusions did not aid or relieve appellant of the burden to specially allege the facts upon which it would rely to avoid appellee's prima facie case by showing forfeiture of the policy. Appellee's case was established independently and without involving the facts offered by appellant to show a forfeiture of the policy. Appellant's facts were not to disprove, but to avoid the legal effect of the facts establishing appellee's case.

In the absence of any showing to the contrary, it is to be presumed that the trial judge in rendition of his judgment disregarded appellant's evidence as incompetent for want of pleading to support it.

The judgment of the trial court is affirmed.