LONGHORN FLYING CLUB, INC., et al., Appellants,

v.

Gayle DRAGOO et al., Appellees.

No. 11780.

Court of Civil Appeals of Texas, Austin.

Feb. 17, 1971.

Rehearing Denied March 10, 1971.

Evans, Pharr, Trout & Jones, Lubbock, Small, Herring, Craig, Werkenthin & Shannon, C. C. Small, Jr., Austin, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, M. W. Parse, Jr., Houston, Hooper & Robinson, Elbert Hooper, Austin, for appellees.

O'QUINN, Justice.

This suit was brought by insured to compel delivery of drafts issued by the insurer in settlement of claims for damaged aircraft. The insurer filed a cross action for unpaid premiums, on the policy under which the aircraft were insured.

Longhorn Flying Club, a non-profit corporation and its business corporation subsidiary, Longhorn Aero Club, Inc., sued Southern Marine and Aviation Underwriters, Inc., to require delivery and payment of drafts totaling $49,052.64 issued in settlement of claims for damages to aircraft owned by plaintiffs. The plaintiffs also sued for damages resulting from the filing of a forged security agreement with the Federal Aviation Administration by Southern Marine and Gayle Dragoo, the local recording agent who handled the contract of insurance.

Southern Marine alleged by answer that it was a correspondent for the underwriters of the insurance contract on which unpaid premiums, later found by the trial court to total $48,650.83, should be offset against the losses payable. In reply to this cross action by Southern Marine, plaintiffs alleged that their promissory note, payable to Southern Marine in the sum of $55,549.-32, had been accepted in settlement of the premium account.

Citizens National Bank of Lubbock, one of the appellants, intervened in district court alleging that it was a payee on two of the drafts held by Southern Marine totaling $18,445.43, these drafts representing proceeds of settlement for damages to aircraft owned by plaintiffs in which the bank held security interests. Southern Marine answered the intervention, pleading that the bank was not named as a loss payee in the insurance contract and that the bank had paid no consideration for the contract.

Gayle Dragoo, one of the defendants, confessed judgment at the trial on plaintiffs' claim for damages, on account of the forged security agreement, in the amount of $395.50.

Trial was before the court without a jury. The trial court rendered judgment that plaintiffs, Longhorn, and intervenor, Citizens bank, take nothing against Southern Marine. The court, upon finding that the unpaid damage claims amounted to $49,052.64 and that premiums amounting to $48,650.83 were unpaid, rendered judgment for Southern Marine against Longhorn for the unpaid premiums, against which the unpaid damage claims were credited.

Both Longhorn and Citizens bank have appealed from this judgment and bring four points of error.

■ The trial court made no findings of fact or conclusions of law and none was requested. It is settled that: "When find-

ings of fact and conclusions of law are not requested or filed, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." Seaman v. Seaman, 425 S.W.2d 339 (Tex.Sup.1968); Bishop v. Bishop, 359 S.W.2d 869 (Tex.Sup.1962).

The validity of the judgment must be tested on the assumption that the trial court found every disputed fact in such a way as to support the judgment rendered. Construction and General Labor Union v. Stephenson, 148 Tex. 434, 225 S.W.2d 958 (1950); Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74 (1946); Massachusetts Mutual Life Ins. Co. v. Gaskamp, 420 S.W.2d 739 (Tex.Civ.App.1967, no writ).

The foremost question is whether Longhorn's note, payable to Southern Marine in the principal sum of $55,549.32, extinguished the existing premium account and became a new obligation in lieu of the former debt. In other words, the question is whether there was a novation by reason of the note that discharged the obligation on premium accounts.

Southern Marine issued to Longhorn a "Cover Note" on November 1, 1967, showing that Southern Marine had effected insurance with certain underwriters at Lloyd's London. The Cover Note and the insurance policy provided for premiums to be paid as specified. The policy became ineffective less than two years later by cancellation, on September 6, 1968.

Within a period of less than thirteen months after the policy was issued Longhorn had become indebted to Southern Marine for gross premiums which according to Southern Marine's records were in excess of $74,800.00. The record shows that Longhorn was in financial difficulty at that time, a fact known to Southern Marine, and that Southern Marine was making efforts to collect the unpaid premiums. Also, at that time, claims totaling $49,052.64 had become payable under the policy, and Southern Marine had drawn drafts on its bank account to cover all claims.

Southern Marine sought to retain the claims drafts until past due premiums were paid in such amounts as to reduce the premium account to a sum equal to the total of the claims, and thereafter to release claims drafts only in the amount of past due premiums additionally paid by Longhorn.

John Nichols, manager of the Houston office of Southern Marine, instructed Gayle Dragoo, an insurance agent in Austin, by letter dated November 20, 1968, to obtain a promissory note from Longhorn for the full amount of the unpaid premiums, in the sum of $74,841.06, and to secure the note with liens on 160 aircraft owned by Longhorn and "on everything else that we can nail down." Dragoo was further instructed "* * * to include the fact that we [Southern Marine] will hold all loss drafts until such time that the Dollar amount of the loss drafts exceed the balance owing on the note at which time we will begin to release the loss drafts on a basis whereby we are always holding at least as much money on the loss drafts as the balance on the note."

Dragoo, in response to these instructions from Nichols, sent draft of a note to Nichols for approval on January 3, 1969. The draft called for a note in the principal sum of $73,000.00. The draft was revised by attorneys for Southern Marine in Houston. The final documents as revised were mailed to Dragoo on January 24, 1969, and the executed documents were returned to Southern Marine on February 6, 1969. Southern Marine then sought to perfect the liens on Longhorn's aircraft by filing necessary documents with the Federal Aviation Authority.

After this suit was filed by Longhorn on April 6, 1969, it became known to Southern Marine that the note for $72,841.06 had not in fact been executed by Longhorn but was a forgery. It was also after suit had been filed that Southern Marine learned that

Longhorn had paid additional sums in 1968 to Dragoo on the premium account and had thereby reduced the unpaid balance by December, 1968, to $55,549.32, nearly $17,300.00 less than the forged note of February 6, 1969, and only about $6,500 more than the total of claims drafts.

Dragoo had obtained an unsecured promissory note from Longhorn for $55,549.32 on December 16, 1968, which provided for monthly payments of $1,000. Dragoo advised Nichols by memorandum at that time that he had a simple note which, he said, "* * * is not the note we have asked for, so I am holding this one until I get the completed note which I will forward to you." The record discloses that in this and other correspondence with Nichols concerning the note Dragoo did not mention at any time the principal amount of the note. The original note executed by Longhorn in December, 1968, was never delivered to Southern Marine. A copy of the note was made available to Southern Marine for the first time in June, 1969, about two months after this lawsuit was filed.

Longhorn introduced evidence that about the middle of February, 1969, counsel for Longhorn wrote Nichols a letter in which the principal of the note for $55,549.32 was mentioned in the following language:

"The file [of Longhorn, delivered to counsel] also indicates that on December 16, 1968, a note in the principal amount of $55,549.32, payable to your order, was delivered to your agent in settlement of the premium due on the insurance evidenced by the aforesaid certificate. The file also indicates that the December, 1968 and January, 1969 payments on said note have been made and checks therefor have been negotiated for your account."

The letter continued by making demand for payment of claims that had been adjusted and for prompt adjustment of pending claims, and contained the following final paragraph:

"If, for any reason, you deny liability or have any reason for withholding the prompt settlement of these claims, we would appreciate your immediate advice in this respect."

At the time Nichols received this letter Southern Marine already had in its possession the note for $72,841.06, the gross amount Southern Marine believed Longhorn owed in premiums, which note purported to be secured by liens, including a second lien on 160 aircraft. Nichols testified that he noticed a discrepancy in the amount of the note mentioned in the letter and made a telephone call to Dragoo who said he would "clear it up" as to the figure of $55,549.32 mentioned by counsel for Longhorn. Dragoo followed up with a letter to Nichols on February 19, 1969, which read in part as follows:

"Also, respect the letter from lawyer, Miller [Longhorn executive director] advises they did this because the banks suggested that they do it hoping that you would go ahead and release the checks. Also, the bank advisors called the clubs attention to the fact that club is paying interest on both the unrepaired or grounded planes on which we hold the drafts and on the premium balance owed. I quickly explained our story on this. All seems to be satisfied now on this count. I will talk to the Attorney * * * [Longhorn counsel] tomorrow and explain to him and see if he has furhter [sic] questions. If he does, I will advise you. The club is still working on getting the balance down to equal to drafts and then all should work better for us all."

After counsel for Longhorn wrote Nichols in February, 1969, in which communication the note for $55,549.32 was mentioned, Longhorn made three payments of $1,000 each in the months of March, April, and May. The notes were forwarded to Nichols with a notation that they were payments on a Longhorn note. Nichols testified that he received the three payments.

Southern Marine argues that it received no benefits on the note for $55,549.32.

"The principal balance of the note," Southern Marine pointed out, "was some $10,000 less than was owed to Southern Marine as net premiums, and precisely equaled the amount owed on premiums as between Longhorn and Dragoo. Southern Marine was entitled to the payments made regardless, and the full amount of the payments was credited to the premium account. Interest was not accepted."

We agree with the contention of Southern Marine that not only were no benefits received by Southern Marine, but it did not have knowledge of all material facts at the time payments were made by Longhorn. Longhorn urges that even if the note for $55,549.32 "* * * was not the type desired by Southern Marine [that is, a secured note] and originally requested, Southern Marine, after being fully advised of the existence of the note and after being requested to state any complaint it might have about the transaction, continued to accept payments on the note."

■ Although this argument suggests a contention of ratification, which we do not find was pleaded as required by Texas Rules of Civil Procedure, rule 94, the more basic question is whether the note for $55,549.32 had been accepted as payment of the premium account. Absent a clear showing that the note was intended by the parties as payment of the premium account, the note given by Longhorn as the debtor does not amount to payment of the indebtedness. Duncan v. United Mutual Fire Ins. Co., 113 Tex. 305, 254 S.W. 1101 (Tex.Com.App.1923, adopted by Sup.Ct.); Page v. Superior Stone Products, Inc., 412 S.W.2d 660 (Tex.Civ.App.1967, writ ref. n.r.e.).

The effect of a novation, if accomplished, is to extinguish an existing obligation, in this case the premium account, and to substitute a new obligation, in this case, as Longhorn urges, an unsecured note for $55,549.32. To achieve this substitution, Southern Marine would have had to be willing to surrender the claims drafts it was holding and not insist, as it actually did, that the note be secured additionally by 160 aircraft.

The rule controlling proof of a contract of novation was stated in Cooper Grocery Co. v. Strange, 18 S.W.2d 609, 612 (Tex. Com.App.1929) in this language:

"A contract of novation must be proved as other contracts are. It is never presumed, and must be clearly established by evidence of a discharge of the original debt by express agreement or by acts of the parties clearly showing an intention to work a novation."

■ There is no meeting of the minds to effect a contract unless all parties to the contract have in mind the same terms, conditions, and subject matter. The burden to show a novation was on Longhorn. We do not find proof in the record of an intent to create a novation, nor do we find it sufficiently established in this case that there was any agreement creating a novation. Longhorn, in dealing with Nichols of Southern Marine had one note ($55,549.32) in mind, and Nichols had in mind a secured note, although, as it later developed, a forgery, in the principal sum of $72,841.-06. Nichols believed Longhorn owed the latter amount on the premium account, while Longhorn believed, accurately as it later developed, that the account was considerably less, or the amount of the unsecured note made December 16, 1968.

Nichols testified that he never requested the note for $55,549.32 and that the note was never accepted by Southern Marine as payment of the premium obligation. As already observed, Nichols requested a secured note for $72,841.06, the security to consist of the loss drafts which he already held and a second lien on 160 aircraft owned by Longhorn. We find insufficient proof that Dragoo, in obtaining the note for $55,549.32, intended that the note would become a substitute for the premium account.

We hold that the trial court was correct in impliedly finding that there was no contract of novation. The point brought by Longhorn on this issue is overruled.

■ Longhorn contends under its second point that it was error for the trial court to permit Southern Marine to offset the funds it held in the loss drafts against the debt Longhorn had incurred for premiums. The basis for this contention is that Southern Marine was agent for Longhorn and its creditors with respect to the loss drafts and was agent for the insurers with respect to the premiums Longhorn owed. Longhorn argues that there was no mutuality of claims; that the claims must not only be the demands of the same parties, but that the claims must be held in the same capacity or right.

Longhorn urges that Southern Marine was individually liable to Longhorn and its creditors for the settlement proceeds collected from the underwriters. "It was error," Longhorn insists, "to permit Southern Marine to offset its own liability against a liability of Longhorn to the insurance companies. The insurance companies are not parties to this action, and any debt due them by Longhorn simply cannot properly be offset against Southern Marine's liability to Longhorn."

Longhorn sued Southern Marine on adjusted claims arising under the insurance contract, and Southern Marine brought its cross action for premiums Longhorn still owed under the same contract. Longhorn did not sue Southern Marine as agent for Longhorn. It was not shown that the underwriters of the policy had delivered any funds to Southern Marine to be held for payment to Longhorn. There was proof that funds for payment of the loss claims would come from Southern Marine's bank account. Under the accounting arrangement between Southern Marine and the underwriters, premiums due the underwriters were offset against losses payable. Through the books and records of Southern Marine, proof was made that the premiums from Longhorn were due Southern Marine.

The unsecured note executed by Longhorn was made payable to Southern Maine, an admission of owing that sum directly to Southern Marine. Mutuality, if such be required, existed, since Southern Marine was individually liable to Longhorn for the loss claims. Southern Marine acted as a broker with reference to insurance provided through underwriters in that Southern Marine collected and remitted premiums while servicing and paying losses, and as to both such transactions Southern Marine reported information to the underwriters. Premium payments were placed in Southern Marine's bank account and losses were paid from the same account. Thus Southern Marine acted in the same capacity with respect to both collection of premiums and payment of losses incurred under the insurance contract.

Under the facts of this case we hold that the trial court properly permitted the counter-claim of Southern Marine for unpaid premiums to be adjudicated in the suit brought by Longhorn to collect loss claims. Authority for this action is derived from Tex.Rules Civ.Proc. 97.

■ Under their third point of error, Longhorn and Citizens urge that Southern Marine should not have been permitted by the trial court to offset, against the damage claims due Citizens, an amount in excess of the proportionate amount of the insurance premiums attributable to the aircraft securing extension of credit by Citizens to Longhorn.

Citizens was an intervenor, alleging that Longhorn was indebted to Citizens and that in connection with the obligation there were certain security agreements covering aircraft owned by Longhorn. Citizens alleged a past due obligation owing by Longhorn and that Citizens held " * * * an equitable lien on the proceeds of the insurance policy to the extent of the debt secured by the mortgage and security interest."

In reply, Southern Marine generally denied allegations of the plea in intervention and also denied any consideration for or the existence of any contract between Citizens and Southern Marine.

No proof was made of any indebtedness owed Citizens by Longhorn, nor were the security agreements made by Longhorn introduced in evidence. Southern Marine conceded that in October, 1969, it made an effort to collect premiums incurred by Longhorn by making demands upon various lienholders under a breach of warranty endorsement. It was shown that Longhorn had supplied Southern Marine with the list of lienholders on this occasion. The demand made at that time to Citizens was not honored within the ten-day period provided for in the demand.

In the absence of proof that Longhorn owed Citizens, that there was a security agreement between them, or that Citizens had an interest in the claims for losses, and without proof of a contract between Citizens and Southern Marine, the trial court correctly held that Citizens take nothing by its intervention.

■ Lastly, Longhorn urges that the trial court erred in failing to give Longhorn judgment for the amount of the damage claims which was in excess of the total premiums. The basis for this contention is that the premiums due on the contract were finally determined to be $48,-650.83, which the trial court offset against all claims, amounting to $49,052.64. Longhorn complains that the trial court made no disposition of the balance of the amount of settled claims in the sum of $401.81.

Longhorn sought by its suit an order that "* * * the drafts held by the defendant Southern Marine [be] delivered * * * and paid." All drafts were payable jointly to Longhorn, and, in each instance, to a third party to this lawsuit, but there was no draft for $401.81. No evidence was introduced to aid the trial court in determining to whom the sum of $401.81 should be paid.

Since the adjusted claims under the contract of insurance exceeded the premiums due by $401.81, Southern Marine is not entitled to retain that amount. It appears that this sum should be paid over by Southern Marine to Longhorn and such other party or parties shown to have an interest in the money.

Under Tex.Rules Civ.Proc. 434 it is the duty of this Court to enter the kind of judgment the trial court should have entered. We are powerless in this case, however, to modify the judgment, since it does not appear clearly from the statement of facts what the specific terms of the decree as modified should be. We will affirm the judgment of the trial court in all things except as to disposition of the sum of $401.81. The facts are not fully developed to provide a basis upon which this Court can ascertain the proper parties to whom the sum of $401.81 should be paid over by Southern Marine.

Judgment of the trial court is in all things affirmed, except as to failure to dispose of $401.81 found by the trial court to be in excess of the amount of premiums due. The cause is remanded for further proceedings to determine the proper parties entitled to receive the sum of $401.81 held by Southern Marine in the settled claims fund.

Affirmed in part and in part, reversed and remanded.

SHANNON, J., not sitting.